## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRUSTGARD INSURANCE COMPANY
671 South High Street
Columbus, OH 43216          :   NO.

v.

LYNN M. FAGAN, individually and
d/b/a BRIGHT FUTURES SOBER
LIVING HOMES
646 Madison Ave
Jermyn, PA 18433

NEW VIEW HOMES, INC.
646 Madison Ave
Jermyn, PA 18433

CHERYL LOCONTE, individually
and as Administratrix of the
ESTATE OF AMANDA M.
LOCONTE
310 Greeley Lake Road
Lackawaxen, PA 18425

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Trustgard Insurance Company, by and through its attorneys,

Bennett, Bricklin & Saltzburg LLC, requests that this Court grant it declaratory relief

as follows:

## INTRODUCTION AND JURISDICTION

1.     This is an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq*., seeking to determine whether Trustgard Insurance Company ("Trustgard") is obligated to defendant and/or indemnify Lynn M. Fagan, individually and doing business as Bright Futures Sober Living Homes, and New View Home, Inc. against an underlying lawsuit pending in the Court of Common Pleas of Lackawanna County at docket number 17-cv-4698, and captioned, Cheryl Loconte, as Administratrix of the Estate of Amanda M. Loconte v. New View Homes, Inc., *et al*. ("Loconte Action").  See Exhibit A, Complaint filed in Loconte Action.

2.     Trustgard is currently providing a defense to Lynn M. Fagan, individually and doing business as Bright Futures Sober Living Homes, and New View Home, Inc. (the "Insureds") under Trustgard's Dwelling Fire Policy number DF 1481191-01, covering the policy period from April 22, 2015 to April 22, 2016 ("Trustgard Policy"), and insuring the premises located at 533 Birch Street, Scranton, PA 18508 ("Insured Premises").  See Exhibit B, Certified Trustgard Policy (Premiums Redacted).

3.     Plaintiff, Trustgard Insurance Company, is a corporation organized under the laws of the State of Ohio with a principal place of business located at 671 South High Street, Columbus, Ohio, 43216.

4. Defendant, Lynn M. Fagan, individually and doing business as Bright Futures Sober Living Homes, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 646 Madison Avenue, Jerwyn, PA 18433.

5. Defendant, New View Homes, Inc., is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 646 Madison Avenue, Jerwyn, PA 18433.

6. Defendant, Cheryl Loconte, individually and as Administratrix of the Estate of Amanda Loconte, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 310 Greeley Lake Road, Lackawaxen, PA 18425.

7. The Estate of Amanda M. Loconte was raised by the Register of Wills of Pike County, Pennsylvania, in or about August 2017.

8. The amount in controversy exceeds $75,000.00 in that the Loconte Action seeks damages in excess of $50,000.00 for the death of Amanda Loconte; and, the Trustgard policy in question has an "each occurrence" limit of $100,000.00.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

## THE LOCONTE ACTION

10. On August 31, 2017, Cheryl Loconte, as Administratrix of the Estate of Amanda M. Loconte, filed a complaint in the Loconte Action naming as defendants,

New View Homes, Inc. and Lynn M. Fagan, individually and doing business as Bright Futures Sober Living Homes.  See Exhibit A.

11.    The Loconte Complaint alleges that New View Homes, Lynn Fagan, and Bright Futures Sober Living Homes, owned and operated multiple sober living homes, including a sober living home located at the Insured Premises, 533 Birch Street, Scranton, Pennsylvania.  See Exhibit A at ¶ 9.

12.    The Loconte Complaint alleges that in July 2015, Amanda Loconte, who had a history of heroin, morphine, and alcohol addiction, contacted Ms. Fagan and Bright Futures about residing in one of its sober living facilities.  See Exhibit A at ¶¶ 11, 15.

13.    In response to the inquiry, the Loconte Complaint alleges that Ms. Fagan told Amanda Loconte that she would "provide[] a cost effective, safe, and structured environment for people in recovery," "frequent and random drug testing" to "maintain a sober environment within the residences," mandatory participation in scheduled meetings held at the residences, and House Rules to which all residents were required to adhere.  See Exhibit A at ¶¶ 13-14.

14.    The Loconte Complaint alleges that the stated purpose of the sober living services was to provide "security and predictability of the residents and others in recovery," and "a home in which residents could live a sober, independent life while still providing structure, support, guidance, and discipline."  Id. at ¶¶ 13, 17.

15.    The Loconte Complaint alleges that Amanda Loconte moved into the Insured Premises on July 22, 2015.  See Exhibit A at ¶ 19.

16.    The Loconte Complaint alleges that Amanda Loconte paid monthly rent in exchange for which Ms. Fagan, Bright Futures, and New View Homes "undertook for consideration to render services to … [Amanda] Loconte, in connection with [their] ownership, operation, and/or conduct of a sober living residence," which were "necessary for the protection of Amanda M. LoConte."  See Exhibit A at ¶¶ 19, 21.

17.    The Loconte complaint alleges that Ms. Fagan, Bright Futures and New View failed to "provide any services related to the recovery of their residents as represented to … [Amanda] Loconte."  See Exhibit A at ¶¶ 22-24.

18.    The Loconte Complaint alleges that "[o]n September 4, 2015, Amanda M. LoConte passed away due to the combined pharmacological effects of morphine and alcohol."  See Exhibit A at ¶ 28.

19.    The Loconte Complaint alleges that the death of Amanda Loconte resulted from the failure of Ms. Fagan, Bright Futures, and New View Homes to provide the sober living services promised to Amanda Loconte.  See Exhibit A at ¶¶ 31-34.

20.    The Loconte Complaint asserts four causes of action: Survival Action (Count I); Wrongful Death (Count II); Violation of the Unfair Trade Practices and

Consumer Protection Law (Count III); and Negligence *Per Se* (Count IV).  <u>See</u> Exhibit A at Counts I – IV.

21.     The Loconte Complaint alleges that conduct of Ms. Fagan, Bright Futures, and New View "demonstrate[d] wanton and willful conduct that constitutes such recklessness as to evidence a conscious disregard for the rights and safety of others," thereby affording a basis for punitive damages.  <u>See</u> Exhibit A at ¶¶ 40, 46.

## THE TRUSTGARD POLICY

22.     The Trustgard Policy is issued the named insured, Lynn M. Fagan, and covers the Insured Premises.  <u>See</u> Exhibit B at Declarations.

23.     Under "COVERAGE L – PREMISES LIABILITY COVERAGE" the Trustgard Policy contains the following insuring agreement:

> **We** will pay all sums, up to our limit of liability shown on the Declarations page for this coverage, arising out of any one loss or which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damages**, caused by an **occurrence** covered by this policy and arising out of the ownership, maintenance or use of the **insured premises**.

<u>See</u> Exhibit B at E-1.

24.     Under paragraph A to "SECTION II – LIABILITY PROTECTION EXCLUSIONS," the Trustgard Policy recites several exclusions which "**we** do not cover" under "Coverage L – Premises Liability Coverage and Coverage M – Premises Medical Payments Coverage."  <u>See</u> Exhibit B at F-1.

25.     Under Exclusion A(12), the Trustgard policy does not cover:

**Bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to legitimate use of prescription drugs by a person following the orders of a licensed physician.

See Exhibit B at F-2, Exclusion 12.

26.     Under Exclusion A(3), the Trustgard policy does not cover:

**Bodily injury** or **property damage** arising out of the **business** pursuits of an **insured**.

See Exhibit B at F-1.

27.     The Trustgard Policy provides the following definition of "business:"

"**Business**" means any full-time or part-time trade, profession or occupation. It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

See Exhibit B at Definitions-1.

28.     Under Exclusion A(2), the Trustgard Policy does not cover:

**Bodily injury** or **property damage** arising out of the rendering or failure to render professional services.

See Exhibit B at F-1.

29.     Under Exclusion A(5), the Trustgard Policy does not cover:

**Bodily injury** or **property damage** caused by the willful, malicious, or intentional act of any person, including any claims alleging negligent supervision, negligent entrustment, or negligent failure to control against any **insured** arising out of the willful, malicious, or intentional act.

<u>See</u> Exhibit B at F-1.

30.     Under paragraph B to "SECTION II – LIABILITY PROTECTION EXCLUSIONS," the Trustgard Policy recites several exclusions which "**we** do not cover" under "Coverage L – Premises Liability Coverage."  <u>See</u> Exhibit B at F-3.

31.     Under Exclusion B(2), the Trustgard policy does not cover:

Liability assumed under an oral contract or agreement by an **insured**, or under a contract or agreement in connection with any **business** of an **insured**.

<u>See</u> Exhibit B at F-3.

32.     Trustgard assumed the defense of Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, subject to a reservation of rights dated October 3, 2017.  <u>See</u> Exhibit C, Reservation of Rights.

33.     Trustgard assumed the defense of New View Homes, Inc., subject to a reservation of rights dated February 12, 2018.  <u>See</u> Exhibit D, Reservation of Rights.

34.     By way of letters dated February 12, 2018, Trustgard notified Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, and New View Homes, Inc. of its determination that the allegations of the Loconte Action were not covered by the Trustgard Policy, of Trustgard's intention to file this declaratory judgment action, and of Trustgard's intention to continue to provide a defense pending a ruling by the Court in this matter.  <u>See</u> Exhibits D and E, Denial Letters.

## COUNT I – DECLARATORY JUDGMENT
### Exclusion A(12) - Controlled Substances Exclusion
### No Duty to Defend or Indemnify

35.    Plaintiff incorporates the allegations of paragraphs 1 through 34 of its complaint as if the same were fully set forth here at length.

36.    Exclusion A(12) excludes coverage for bodily injury "arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812."

37.    The Loconte Action seeks to recovery for bodily injury to Amanda Loconte arising out of her use of morphine.

38.    Depending upon its dosage in a compound, morphine is either a Schedule II or III "controlled substance" under the Federal Food and Drug Law.  28 U.S.C.A. § 802.

39.    The entirety of the allegations of the Loconte Complaint fall within the scope of Exclusion A(12) such that Trustgard is entitled to a declaration that it has no duty to defend or indemnify Lynn Fagan, Bright Futures Sober Living Homes or New View Homes against the Loconte Action.

40.    In the event Trustgard owes a duty to defend, the Loconte Action seeks to recover for bodily injury falling within Exclusion A(12) such Trustgard is entitled to a declaration that it owes no duty to indemnify Lynn Fagan, Bright Futures Sober

Living Homes, or New View Homes for any settlement or judgment that may be entered in the Loconte Action.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to defend or indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. against the Loconte Action.

## COUNT II – DECLARATORY JUDGMENT
### Exclusion A(3) – Business Pursuits Exclusion
### No Duty to Defend or Indemnify

41.     Plaintiff incorporates the allegations of paragraphs 1 through 40 of its complaint as if the same were fully set forth here at length.

42.     Exclusion A(3) excludes coverage for bodily injury "arising out of the **business** pursuits of an **insured**."

43.     The Loconte Action seeks to recover for bodily injury arising out of the failure of the Insureds to provide sober living services in exchange for compensation.

44.     The provision of sober living services by the Insureds in exchange for compensation constitutes the business pursuits of an insured.

45.     The entirety of the allegations of the Loconte Complaint fall within the scope of Exclusion A(3) such that Trustgard is entitled to a declaration that it has no

duty to defend or indemnify Lynn Fagan, Bright Futures Sober Living Homes, or New View Homes against the Loconte Action.

46.     In the event Trustgard owes a duty to defend, the Loconte Action seeks to recover for bodily injury falling within Exclusion A(3) such that Trustgard is entitled to a declaration that it owes no duty to indemnify Lynn Fagan, Bright Futures Sober Living Homes or New View Homes for any settlement or judgment that may be entered in the Loconte Action.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to defend or indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. against the Loconte Action.

### COUNT III – DECLARATORY JUDGMENT
### Exclusion A(2) – Professional Services Exclusion
### No Duty to Indemnify

47.     Plaintiff incorporates the allegations of paragraphs 1 through 46 of its complaint as if the same were fully set forth here at length.

48.     Exclusion A(2) excludes coverage for bodily injury "arising out of the rendering or failure to render professional services."

49.     The Loconte Action seeks to recovery for bodily injury to Amanda Loconte arising out of the failure of Lynn Fagan, Bright Futures Sober Living

Homes, and New View Homes to provide sober living services, some or all of which constitute professional services within the meaning of Exclusion A(2), such that Trustgard is entitled to a declaration that it owes no duty to indemnify Lynn Fagan, Bright Futures Sober Living Homes, or New View Homes for any settlement or judgment that may be entered in the Loconte Action.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. against the Loconte Action.

<u>**COUNT IV – DECLARATORY JUDGMENT**</u>
**Exclusion A(5) – Willful Misconduct Exclusion**
**No Duty to Indemnify**

50.    Plaintiff incorporates the allegations of paragraphs 1 through 49 of its complaint as if the same were fully set forth here at length.

51.    Exclusion A(5) excludes coverage for bodily injury "caused by the willful, malicious, or intentional act of any person."

52.    The Loconte Complaint alleges that the actions of Lynn Fagan, Bright Futures Sober Living Homes, and New View Homes constituted "wanton and willful conduct that constitutes such recklessness as to evidence a conscious disregard for the rights and safety of others."

12

53.    If it is determined these allegations are true, the bodily injury will have been caused by a willful, malicious, or intentional act within the meaning of Exclusion A(5), such that Trustgard is entitled to a declaration that it owes no duty to indemnify Lynn Fagan, Bright Futures Sober Living Homes, or New View Homes for any settlement or judgment that may be entered in the Loconte Action.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. against the Loconte Action.

## COUNT V – DECLARATORY JUDGMENT
### Exclusion B(2) – Contractual Liability Exclusion
### No Duty to Indemnify

54.    Plaintiff incorporates the allegations of paragraphs 1 through 53 of its complaint as if the same were fully set forth here at length.

55.    Exclusion B(2) excludes coverage for liability "assumed under an oral contract or agreement by an **insured**, or under a contract or agreement in connection with any **business** of an **insured**."

56.    To the extent it is determined that the liability of Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes was assumed in a contract undertaken by Lynn Fagan, Bright Futures

13

or New View Homes within the meaning of Exclusion B(2), Trustgard is entitled to a declaration that it owes no duty to indemnify Lynn Fagan, Bright Futures Sober Living Homes or New View Homes for any settlement or judgment that may be entered in the Loconte Action.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. against the Loconte Action.

### COUNT VI – DECLARATORY JUDGMENT
**Punitive Damages**
**No Duty to Indemnify**

57.     Plaintiff incorporates the allegations of paragraphs 1 through 56 of its complaint as if the same were fully set forth here at length.

58.     The Loconte Action seeks to recover punitive damages from the Insureds.

59.     Punitive damages are not insurable in the Commonwealth of Pennsylvania as a matter of public policy.

60.     If punitive damages are awarded against Lynn Fagan, Bright Futures Sober Living Homes, or New View Homes, Trustgard is entitled to a declaration that

it owes no duty to indemnify Lynn Fagan, Bright Futures Sober Living Homes, or New View Homes for any award of punitive damages.

WHEREFORE, plaintiff, Trustgard Insurance Company, requests that judgment be entered in its favor, and that the Court enter an order declaring that Trustgard Insurance Company is not required to indemnify Lynn Fagan, individually and doing business as Bright Futures Sober Living Homes, or New View Homes, Inc. for any award of punitive damages entered in the Loconte Action.

**BENNETT, BRICKLIN & SALTZBURG LLC**

**BY:** _____

NICHOLAS A. CUMMINS
ATTORNEY I.D. NO. 203238
1601 Market Street, 16th Floor
Philadelphia, PA 19103
(215) 561-4300
(215) 561-6661 (Fax)
cummins@bbs-law.com
Attorney for Plaintiff,
Trustgard Insurance Company

Date: April 2, 2018

# <u>Exhibit A</u>

To Complaint for Declaratory Judgment
<u>Trustgard Insurance Company v. Lynn M. Fagan, et al.</u>

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Lackawanna _____ County

*The information collected on this form is used solely for court administration purposes.  This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

*For Prothonotary Use Only:*

Docket No: 17CV4698

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Cheryl LoConte, Administratrix of the Estate of Amanda M. LoConte | New View Homes, Inc. |

| Are money damages requested? ☒ Yes  ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

Is this a *Class Action Suit*?   ☐ Yes   ☒ No        Is this an *MDJ Appeal*?   ☐ Yes   ☒ No

Name of Plaintiff/Appellant's Attorney: _Carl J. Greco, Esquire_

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.**  If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☒ Other:
  Negligence/Wrongful Death

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABILITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:

*2017 AUG 31  JUDICIAL CIVIL  CLK  MAUREEN KELLY  LACKAWANNA COUNTY  04*

CHERYL LOCONTE, as the
Administratrix of the ESTATE of
AMANDA M. LOCONTE, Deceased,

      PLAINTIFF,

VS.

NEW VIEW HOMES, INC.;
LYNN M. FAGAN, individually, and
t/a/d/b/a BRIGHT FUTURES SOBER
LIVING HOMES,

      DEFENDANTS.

: IN THE COURT OF COMMON PLEAS
: OF LACKAWANNA COUNTY
:
:
: CIVIL ACTION
:
:
: JURY TRIAL DEMANDED
:
:
:
:
:
: NO. 17CV4C98
:

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### NOTICE TO DEFEND

     You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally or by attorney, and filing, in writing, with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court, without further notice, for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

     YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

     IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

| | |
|---|---|
| Northeastern Pennsylvania<br>Legal Services<br>33 N. Main Street, Suite 200<br>Pittston, PA 18640<br>(570) 299-4100 | Lackawanna Bar Association<br>223 Penn Avenue<br>Scranton, PA 18503<br>(570) 969-9161 |

CHERYL LOCONTE, as the
Administratrix of the ESTATE of
AMANDA M. LOCONTE, Deceased,

    PLAINTIFF,

VS.

NEW VIEW HOMES, INC.;
LYNN M. FAGAN, individually, and
t/a, d/b/a BRIGHT FUTURES SOBER
LIVING HOMES,

    DEFENDANTS.

: IN THE COURT OF COMMON PLEAS
: OF LACKAWANNA COUNTY
:
:
:
: CIVIL ACTION
:
:
: JURY TRIAL DEMANDED
:
:
:
:
:
: NO. 17 CV 4698
:

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## COMPLAINT

AND NOW COMES, Plaintiff, Cheryl LoConte, as the Adminstratrix of the Estate of Amanda M. LoConte deceased, by and through her attorneys, GRECO LAW ASSOCIATES, P.C., and files this complaint against the above-named defendants and, in support thereof, avers as follows:

1. Plaintiff, Cheryl LoConte is an adult individual residing at 310 Greeley Lake Rd., Lackawaxen, Pike County, Pennsylvania, 18425.

2. Plaintiff is the natural mother of Amanda M. LoConte, deceased, who died on September 4, 2015.

3. Plaintiff was appointed the Administratrix of the estate of decedent, Amanda M. LoConte, on August 23, 2017, by the Register of Wills of Pike County, Pennsylvania. A true and correct copy of the letters of Administration issued by the Register of Wills of Pike County is attached hereto as Exhibit A.

4. Plaintiff brings this action pursuant to 42 Pa. C.S. § 8301 and Pa. R.C.P. 2202(a) as the personal representative of decedent, Amanda M. LoConte, on her own behalf and on behalf of all those entitled by law to recover damages for the wrongful death of decedent, Amanda M. LoConte.

2

5.     The names and addresses of all personal legally entitled to recover damages for the death of decedent, Amanda M. LoConte, and their relationship to the decedent are as follows:

> a. Cheryl LoConte, 310 Greeley Lake Road, Lackawaxen, PA, Natural Mother;
>
> b. Anthony LoConte, 310 Greeley Lake Road, Lackawaxen, PA, Natural Father.

6.     Defendant Lynn M. Fagan is an adult individual residing at 646 Madison Avenue, Jermyn, Lackawanna County, Pennsylvania, 18433.

7.     Defendant New View Homes, Inc. ("New View Homes") is a corporation organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 646 Madison Avenue, Jermyn, Lackawanna County, Pennsylvania, 18433.

8.     Defendant Bright Futures Sober Living Homes a/k/a Bright Futures Women's Sober Living ("Bright Futures") is, upon information and belief, a sole proprietorship, or other unincorporated and unregistered entity, owned and operated by Defendant Fagan, with an address for service located at 646 Madison Avenue, Jermyn, Lackawanna County, Pennsylvania, 18433.

9.     At all relevant times hereto Defendants owned and operated multiple sober living residences in Scranton, Lackawanna County, Pennsylvania, including but not limited to residences located on Birch, Olive, William, and Willow Streets.

10.    At all relevant times hereto, Defendant New View Homes was engaged in the management and operation of the sober living residences operated by Defendants Fagan and Bright Futures.

11.    In or about July 2015, Amanda M. LoConte contacted Defendant Fagan, individually and t/a/d/b/a Bright Futures regarding sober living residences in Scranton, Pennsylvania.

3

12.    Defendant Fagan represented herself to be the house manager for Defendant Bright Futures.

13.    In the ownership and operation of their sober living residences, Defendants made the following representations to Plaintiff, decedent, and those similarly situated:

        a. Defendants represented that they provided a cost effective, safe, and structured environment for people in recovery;

        b. Defendants represented that residents at their sober living residences are subject to frequent and random drug testing;

        c. Defendants represented that random drug testing would be conducted multiple times a month in order to maintain a sober environment within the residences;

        d. Defendants represented that the purpose of the sober living residences are for security and predictability of the residents and others in recovery;

        e. Defendants represented that residents are required to participate in scheduled meetings that were held in the residences by Defendants;

        f. Advising that residents with any issues or concerns regarding the operation of the sober living residences were instructed to contact Defendant Fagan directly to report these concerns and/or issues.

14.    Prior to moving into the residence, Amanda M. LoConte received the "House Rules" which set Defendants' requirements for the resident at Defendants sober living residence.

15.    Amanda M. LoConte had a history of drug addiction to heroin, morphine, and a related addiction to alcohol.

16.    At all relevant times hereto, Defendants were aware of Amanda M. LoConte's history of drug addition, drug abuse, and use of alcohol.

4

17.   At all relevant times hereto, Defendants' goal as represented to Amanda M. LoConte was to provide a home in which residents could live a sober, independent life while still providing structure, support, guidance, and discipline.

18.   At all relevant times hereto, Amanda M. LoConte relied on the Defendants' representations that Defendants would perform the services as represented to the her and provide structure, support, guidance, and discipline as well as other services related to recovery.

19.   Amanda M. LoConte moved into Defendants' sober living residence located at 533 Birch Street, Scranton, PA on July 22, 2015.

20.   At all relevant times hereto, while Amanda M. LoConte was living at Defendants' sober living residence she paid rent to Defendant New View Homes in the amount of $525.00 per month.

21.   Defendants undertook for consideration to render services to Amanda M. LoConte, in connection with Defendants' ownership, operation, and or conduct of a sober living residence, which Defendants did recognize, or should have recognized, were necessary for the protection of Amanda M. LoConte.

22.   Upon moving into the residence, Amanda M. LoConte was not drug tested multiple times but only tested once within the time she lived in Defendants' sober living residence.

23.   During Amanda M. LoConte's time at the residence, Defendants did not conduct any house meetings as represented.

24.   The only time that Defendants, their agents, representatives, and/or employees presented at the residence was to collect the rent of those living there and at no point did Defendants provide any services related to the recovery of their residents as represented to Amanda M. LoConte.

25.   Additionally, Amanda M. LoConte's messages and phone calls to Defendants and Defendants' house manager went unanswered, and

Defendants failed to address any concerns she had regarding the sober living residence.

26.     At all relevant times hereto, Defendants recognized the services necessary for decedent, and those similarly situated, in recovery and made representations of the same to decedent.

27.     At all relevant times hereto, Defendants failed to provide the services, environment, structure, and discipline as represented to, and relied upon by, Amanda M. LoConte.

28.     On September 4, 2015, Amanda M. LoConte passed away due to the combined pharmacologic effects of morphine and alcohol.

29.     At the time she was found, Amanda M LoConte had been deceased for approximately 19-hours.

30.     At all relevant times hereto, Defendants owed a duty to Amanda M. LoConte to render the represented services in connection with Defendants ownership, operation, and/or conduct of providing and operating a sober living residence with reasonable care.

31.     Defendants failed to exercise reasonable care in undertaking the care of decedent and were negligent, careless, and/or reckless in the manner of the performance of their undertaking, and/or failing to exercise reasonable care to complete their undertaking as follows:

  a. Failing to recognize and/or provide the necessary services due to decedent, and those similarly situated, in the operation of a sober living facility;

  b. Failing to properly staff their residences to provide the services, structure, support, and guidance represented to decedent;

  c. Failing to respond to decedent's concerns and issues concerning the sober living residence;

d. Failing to provide frequent mandatory drug testing as represented;

e. Failing to train their staff in the operation of a sober living facility;

f. Failing to provide structure, support, guidance, and discipline as represented to decedent;

g. Failing to ensure that the House Rules were being followed by the residents of Defendants' facility;

h. Failing to enforce the House Rules that were in place at Defendants' facility;

i. Failing to have adequate safe-guards in place to ensure the safety, structure, support, guidance, and discipline necessary for those in early recovery;

j. Failing to provide a sober living facility with structure, support, guidance, and discipline as represented to decedent;

k. Representing that certain necessary services would be supplied to provide structure, support, and guidance to decedent when Defendants knew, or should have known, that such services were not provided at Defendants' sober living residences;

l. Being otherwise negligent, reckless, and/or careless in the undertaking of their services owed to decedent as may come to light through discovery in this action.

32.  Given decedent's condition as alleged above, of which Defendants were aware, Defendants' failure to exercise reasonable care increased the risk of the harm ultimately suffered by decedent that was her untimely death at age 21.

33.   As a result of Defendants' negligence, carelessness and/or recklessness in the performance of the undertaking of the care of decedent and failure to exercise reasonable care in the discharge of that undertaking, decedent was caused to suffer an untimely death at age 21.

34.   As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness, decedent was caused to and did suffer damages, including decedent's untimely death at age 21.

35.   As a direct and proximate result of Defendants' negligence, recklessness and/or carelessness, Plaintiff's decedent was caused to and did suffer loss of earnings and wages and loss of earnings capacity, past, present, and future.

## COUNT I
## SURVIVAL ACTION

36.   Plaintiff hereby incorporates by reference Paragraphs One (1) through Thirty Five (35) of this Complaint as if set forth fully at length herein.

37.   Plaintiff brings this survival action under 20 Pa. C.S. § 3373, 42 Pa. C.S. § 8302, the applicable Pennsylvania Rules of Civil Procedure and decisional law.

38.   As a direct and proximate result of Defendants' negligence, as set forth in more detail above, decedent suffered and Defendants are liable to Plaintiff for the following damages:

> a. decedent's pain and suffering between the time of her injuries and the time of her death;
>
> b. decedent's total estimated future earning power less her estimated cost of personal maintenance;
>
> c. decedent's loss of retirement and Social Security income;
>
> d. decedent's other financial losses suffered as a result of her death; and

8

e. decedent's loss of enjoyment of life.

39. Plaintiff claims the full measure of damages under the Survival Act and decisional law interpreting this Act.

40. Defendants' negligent, careless, and reckless acts and/or omissions, as set forth in more detail above, demonstrate wanton and willful conduct that constitutes such recklessness as to evidence a conscious disregard for the rights and safety of others, including Amanda M. LoConte; in light thereof, Plaintiff herein makes a claim for punitive damages.

WHEREFORE, Plaintiff demands judgment against all Defendants, individually, jointly, and severally and damages, including punitive damages, in an amount in excess of Fifty-Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT II
### WRONGFUL DEATH ACTION

41. Plaintiff hereby incorporates by reference Paragraphs One (1) through Forty (40) of this Complaint as if set forth fully at length herein.

42. Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. C.S. § 8301, and Pa. R.C.P. § 2202(a).

43. The decedent was survived by Plaintiff, decedent's mother, and Anthony LoConte, decedent's father. They are entitled to recover damages for their daughter's death.

44. The decedent did not bring an action for personal injuries during her lifetime, and no other action for the death of the decedent has been commenced.

45. As a direct and proximate result of Defendants' negligence, carelessness and/or recklessness, as set forth above in more detail, Plaintiff suffered and defendants are liable to the above named beneficiaries for the following damages:

9

a. funeral and burial expenses for the decedent;

b. expenses of administration related to decedent's injuries;

c. the beneficiaries' deprivation and injury as a result of the loss of the support, consortium, comfort, counsel, aid, association, care, and services of the decedent; and

d. all other losses suffered by the beneficiaries including the value of the profound emotional and psychological losses suffered by reason of their child's tragic and premature death, as may be allowed under the Wrongful Death Act and the decisional law interpreting the Act.

46.     Defendants' negligent, careless, and reckless acts and/or omissions, as set forth in more detail above, demonstrate wanton and willful conduct that constitutes such recklessness as to evidence a conscious disregard for the rights and safety of others, including Amanda M. LoConte; in light thereof Plaintiff herein makes a claim for punitive damages on behalf of the above named beneficiaries.

WHEREFORE, Plaintiff demands judgment against all Defendants, individually, jointly, and severally and damages, including punitive damages, in an amount in excess of Fifty-Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest and costs.

## COUNT III

### VIOLATION OF THE UNFAIR TRADE PRACTICES AND COSUMER PROTECTION LAW - 73. PS. § 201, et seq.

47.     Plaintiff hereby incorporates by reference Paragraphs One (1) through Forty Six (46) of this Complaint as if set forth fully at length herein.

48.     In furtherance of Defendants' conduct in the operation of a sober living residence, Defendants made certain representations, as set forth in more

detail above, regarding the services to be provided to decedent and those similarly situated.

49.    Defendants made these representations when they knew, or should have known, that such services were not provided at Defendants' sober living residence.

50.    Amanda M. LoConte relied on the representations made by Defendants as set forth above in more detail.

51.    In addition to misrepresenting the services to be provided to decedent at Defendants' sober living residences, including but not limited to guidance, support and structure, Defendants undertook for consideration to render services to Amanda M. LoConte, in connection with Defendants' ownership, operation, and or conduct of a sober living residence, which Defendants did recognize, or should have recognized, were necessary for the protection of Amanda M. LoConte.

52.    Defendants' negligent, careless, and reckless conduct in the performance of the undertaking of the care of decedent, failing to exercise reasonable care in the discharge of that undertaking, and in negligently misrepresenting the services to be provided to decedent, as set forth in more detail above, constitutes a violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et. seq. ("UTPCPL"), as set forth in more detail above.

53.    Pursuant to the UTPCPL,

> [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and any regulations promulgated under section 3.1 of this act are hereby declared unlawful.

73 P.S. § 201-3.

54.    Pursuant to the UTPCPL,

11

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($ 100), whichever is greater.

73 P.S. § 201-9.2.

55.    Defendants' conduct constituted "Unfair Methods of Competition" and "Unfair or Deceptive Acts or Practices", as defined by 73 P.S. § 201-2, including but not limited to

> a. representing that goods or services are of a particular standard, quality or grade ... ,73 P.S. § 201-2(4)(vii);
>
> b. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding. 73 P.S. § 201-2(4)(xxi).

56.    Defendants were negligent in the performance of the undertaking of the care of decedent, failing to exercise reasonable care in the discharge of that undertaking, and in representing the services to be provided to decedent, as set forth in more detail above.

57.    As a result of Defendants' negligence, carelessness, and/or recklessness in the performance of the undertaking of the care of decedent, failing to exercise reasonable care in the discharge of that undertaking, and in representing the services to be provided to decedent, as set forth in more detail above, decedent was caused to suffer an untimely death by age 21.

WHEREFORE, Plaintiff demands judgment against all Defendants, individually, jointly, and severally in an amount in excess of Fifty-Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, and exclusive of pre-judgment interest, post-judgment interest and costs, attorneys'

fees, and other legal and/or equitable relief as the Court may deem necessary and appropriate.

**COUNT IV**

**NEGLIGENCE PER SE**

58.   Plaintiff hereby incorporates by reference Paragraphs One (1) through Fifty Seven (57) of this Complaint as if set forth fully at length.

59.   Pursuant to the Unfair Trade Practices and Consumer Protection Law,

> [u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act and any regulations promulgated under section 3.1 of this act are hereby declared unlawful.

73 P.S. § 201-3.

60.   Defendants were negligent the performance of the undertaking of the care of decedent, failing to exercise reasonable care in the discharge of that undertaking, and in representing the services to be provided to decedent, as set forth in more detail above.

61.   Defendants' negligent, careless, and reckless conduct in the performance of the undertaking of the care of decedent, failure to exercise reasonable care in the discharge of that undertaking, and in negligently misrepresenting the services to be provided to decedent, as set forth in more detail above, constitutes a violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201, et. seq., as set forth in more detail above.

62.   Defendants conduct constitutes negligence per se because of this violation.

WHEREFORE, Plaintiff demands judgment against all Defendants, individually, jointly, and severally and damages, in an amount in excess of Fifty-Thousand ($50,000.00) Dollars, and in excess of the prevailing arbitration limits, exclusive of pre-judgment interest, post-judgment interest and costs.

Respectfully submitted,

GRECO LAW ASSOCIATES, P.C.

BY: _____

Carl J. Greco, Esquire
Attorney ID # 27561
James D. Greco, Esquire
Attorney ID # 309353
*Attorneys for Plaintiff*
4th Floor
Professional Arts Building
327 N. Washington Avenue
Scranton, PA  18503
(570) 346-4434
(570) 346-4442 facsimile

14

# Exhibit A



COMMONWEALTH OF PENNSYLVA...                    SHORT CERTIFICATE
COUNTY OF PIKE



I,_____SHARON SCHROEDER_____

Register for the Probate of Wills and Granting
Letters of Administration &c. in and for
PIKE County, do hereby certify that on
the 23rd day of August, Two Thousand and
Seventeen,
Letters of ADMINISTRATION
in common form were granted by the Register of
said County, on the

estate of LOCONTE AMANDA MARIE_____, late of LACKAWAXEN TOWNSHIP
            (Last, First, Middle)

in said county, deceased, to LOCONTE CHERYL ANN_____
                                (Last, First, Middle)

and that same has not since been revoked.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the
seal of said office at MILFORD, PENNSYLVANIA, this 23rd day of August
Two Thousand and Seventeen.

File No.      52- 17- 00251
Date of Death   9/04/2015
S.S. #       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

_____Sharon Schroeder_____
                Register Of Wills

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

**VERIFICATION**

Plaintiff, Cheryl LoConte, as Administratrix of the Estate of Amanda M. LoConte, hereby verifies that the foregoing Complaint is based on first-hand information and on information furnished to her counsel and obtained by counsel in the course of this lawsuit. The language of the document is that of counsel and not of the affiant. To the extent that the contents of the document are based on information furnished to counsel and obtained by counsel during the course of this lawsuit, the affiant has relied upon counsel in taking this verification. All statements are founded upon reasonable belief. This verification is made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.


Cheryl LoConte

# Exhibit B

To Complaint for Declaratory Judgment
Trustgard Insurance Company v. Lynn M. Fagan, et al.

# AFFIDAVIT

STATE OF OHIO            )
                         ) ss
COUNTY OF FRANKLIN       )


First being duly cautioned and sworn, Sean R. Heery states as follows:

1.      That he is employed by Grange Mutual Casualty Company as an Administrative Assistant  and
        that in such capacity he has access to certain business records of that Company, including
        insurance records concerning the declaration pages of insurance issued to
        Lynn Fagan.

2.      This information is being presented in response to a request regarding Claim Number:
        FP0002180821.

3.      That after examining the records concerning said insured, he states that Trustgard Insurance
        Company has issued to said insured a Dwelling Fire policy, number DF 1481191.

4.      That he has assembled a copy of which is attached hereto and shows the declaration pages of
        policy coverages and amounts thereof in effect on 09/04/2015.

5.      Further affiant saith naught.

        _____
        Sean R. Heery

Subscribed and sworn to in my presence at Columbus, Ohio, this 11th day of October, 2017

        _____
        **Notary Public**

JONATHON CLIPSON
Notary Public, State of Ohio
My Commission Expires
6/16/2018

*A 2 Z INSURANCE  AGENCY LLC*
*401 RAVINE  ST*
*SCRANTON,  PA        18508*

Trustgard   Insurance   Company
*P.O. Box 1218*
*Columbus, Ohio  43216-1218*

*(570) 382-3481*
*Agent  No. 37-01411-00*
a2zinsuranceagency@live.com
a2zins.net

**Declarations   Page**

To report  a new  claim,  call
**1-800-445-3030**    or your  agent

**Named   Insured   and   Address**

| **Policy   Type:** | *Dwelling Fire* |
|---|---|

**Reason   Issued:**  *Renewal*
**Policy   Number:**  *DF   1481191-01*
**Issue  Date:**  *03/13/15*
**Billable   Party:**  *Electronic Payment*

**LYNN  FAGAN**

**From:** *04/22/15*  **To:** *04/22/16*    12:01 a.m. standard time at the described location and for additional 12 month periods if renewed, as provided in the policy. These declarations with policy provisions, applications, forms, and endorsements, if any, complete the above numbered policy.

The premises  covered  by this policy  is located at:  533 BIRCH ST
SCRANTON   PA        18508

*Coverage is provided where a specific premium charge or limit of liability is shown.*

| Coverages | Limits  of  Liability | Premium |
|---|---|---|
| **TOTAL POLICY  PREMIUM** | | ▬▬ |
| **Section   I - Property   Protection** | | |
| Coverage   A - Dwelling | $195,300 | ▬▬ |
| Coverage   B - Other  Structures | | |
| Coverage   C - Personal  Property | | |
| Coverage   D - Loss of Rents | | |
| Coverage   E - Additional  Living  Expenses | | |
| Loss deductible   $1000 | | |
| **Section   II - Liability   Protection** | | |
| Coverage   L - Premises  Liability | $100,000  each  occurrence | ▬▬ |
| Coverage   M - Premises  Medical  Payments | $1,000  each  person | ▬▬ |
| | $10,000  each  accident | ▬▬ |
| Total  Basic  Coverage   Premium | | ▬▬ |
| Total  Discounts,  Surcharges   and  Optional  Coverages   Premium | | ▬▬ |

Your  Total  Policy  Premium  Is    ▬▬

**THIS IS NOT A BILL.**
Any  outstanding   balance  due  will be billed at a later date.

DF 241C (08-2006)

*Continued...*
DFPOL1C

| Other  Interests/Additional      Named   Insured |  |  |
|---|---|---|
| First Mortgagee<br>PEOPLES NEIGHBORHOOD BANK ISAO<br>PO BOX A<br>HALLSTEAD   PA<br>            18822 |  |  |

**Type  of Policy  & Rating  Information**

| | |
|---|---|
| Dwelling Form:  DF-1 (10/07) | Dwelling  Number:   1 |
| Number  of Families:  1 | Territory:    044 |
| Type of Construction:    Frame | Residence  Usage:   Tenant  Occupied |
| Protection  Class:  4 | |

**Description    of Discounts,   Surcharges   and Optional    Coverages**

| | Premium |
|---|---|
| Inflation  protection  applies  to this  residence  at renewal,<br> Additional  Coverage  - Section  I. | ███████ |
| Policy  Deductible  Charge  Or Credit | ████████ |
| Age of Dwelling  Adjustment | ███████ |

Discount/Surcharges   are  estimated.  The  sum  of discounts/surcharges   may
not add up to the  total  due to rounding.

| Total  Discounts,   Surcharges   and Optional   Coverages    Premium | ██████ |
|---|---|

Named    Insured:    *LYNN  FAGAN*
Policy   Number:    *DF    1481191*

DFPOL2B

# Dwelling Fire Policy DF-1 Basic Form

*Pennsylvania*



Trustgard Insurance Company
P.O. Box 1218 • Columbus, OH 43216-1218

*A Stock Company Wholly-Owned by*
*Grange Mutual Casualty Company*

IHH203JI (10-2007)

THIS PAGE

INTENTIONALLY

LEFT BLANK.

## DWELLING FIRE POLICY COVER SHEET

This Dwelling Fire Policy Cover Sheet identifies the important forms that make up **your** Dwelling Fire insurance policy. **Your** Dwelling Fire insurance policy is a legal contract between **you** and Trustgard Insurance Company and consists of the following forms:

### Declarations Page

This is the form which shows **your** coverages, amounts of insurance, premium charges, risk characteristics, and any endorsements that modify **your** policy or provide **you** with additional coverages.

| Policy Form/Section | Page Numbers | Form Number | Edition Date |
|---|---|---|---|
| DF-1 Basic Form - PENNSYLVANIA | | | |
| Policy Form Title Page | | IHH203JI | (10-2007) |
| Dwelling Fire Policy Cover Sheet | | IHH203JJ | (10-2007) |
| Index | Index - 1 and 2 | IHH203JK | (10-2007) |
| Definitions | Definitions - 1 and 2 | IHH203JL | (10-2007) |
| Section I - Property Protection | A - 1 and A - 2 | IHH203JA | (10-2007) |
| Section I - Perils We Insure Against | B - 1 and B - 2 | IHH203JB | (10-2007) |
| Section I - Property Protection Exclusions | C - 1 and C - 2 | IHH203JC | (10-2007) |
| Section I - Property Protection Conditions | D - 1 through D - 4 | IHH203JD | (10-2007) |
| Section II - Liability Protection | E - 1 and E - 2 | IHH203JE | (10-2007) |
| Section II - Liability Protection Exclusions | F - 1 through F - 4 | IHH203JF | (10-2007) |
| Section II - Liability Protection Conditions | G - 1 and G - 2 | IHH203JG | (10-2007) |
| Section I - Property Protection and Section II - Liability Protection Conditions | H - 1 through H - 4 | IHH203JH | (10-2007) |

### Endorsements

Endorsements that modify **your** coverage may be included with **your** DF-1 Basic Form - Pennsylvania policy. If so, they will be listed on **your** Declarations Page.

**Please read your Declarations Page, DF-1 Basic Form - Pennsylvania policy form, and any endorsements included with your policy carefully.**

THIS PAGE

INTENTIONALLY

LEFT BLANK.

**Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy**

**Your** Dwelling Fire insurance policy is an important legal contract between **you** and Trustgard Insurance Company. **PLEASE READ YOUR POLICY CAREFULLY**. This policy sets forth, in detail, the rights and obligations of both **you** and Trustgard Insurance Company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

The following Index identifies the major provisions of **your** policy and the page number where these provisions are located in **your** policy form. A mendatory or optional coverage endorsements may be attached to **your** policy to modify these policy provisions or provide **you** with additional coverage(s).

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

## INDEX

| Subject | Beginning On Page |
|---|---|
| Agreement | Definitions - 1 |
| Definitions | Definitions - 1 |
| **Section I  - Property Protection** | |
| Additional Coverages | A - 2 |
| Debris Removal | A - 2 |
| Emergency Removal of Property | A - 2 |
| Fire Department Charges | A - 2 |
| Inflation Protection | A - 2 |
| Loss of Rents | A - 2 |
| Necessary Repairs After Loss | A - 2 |
| Other Structures | A - 2 |
| Conditions | D - 1 |
| Abandoned Property | D - 2 |
| Appraisal | D - 1 |
| How Losses Are Settled | D - 1 |
| Insurable Interest | D - 2 |
| Loss Payable Clause | D - 3 |
| Mortgagee | D - 2 |
| No Benefit to Bailee | D - 3 |
| Other Sources of Recovery | D - 3 |
| Our Payment of Loss | D - 2 |
| Recovered Property | D - 3 |
| Suit or Claims Against Us | D - 2 |
| What to do in Case of Loss | D - 1 |
| Coverage A - Dwelling | A - 1 |
| Coverage B - Other Structures | A - 1 |
| Coverage D - Loss of Rents | A - 1 |
| Deductible | D - 1 |
| Exclusions | C - 1 |
| Perils We Insure Against | B - 1 |

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

| Subject | Beginning On Page |
|---|---|

**Section II - Liability Protection**

Additional Coverages ....................................................................................................... E - 2
    Claims Expenses ...................................................................................................... E - 2
    First Aid Expenses .................................................................................................. E - 2

Conditions ........................................................................................................................ G - 1
    Bankruptcy of an Insured Person ......................................................................... G - 2
    Duties of an Injured Person -- Coverage M - Premises Medical Payments Coverage ......... G - 1
    Limits of Liability ................................................................................................... G - 1
    Other Insurance -- Coverage L - Premises Liability Coverage ............................. G - 2
    Severability of Insurance ........................................................................................ G - 1
    Suit Against Us ........................................................................................................ G - 1
    What to do in Case of Bodily Injury or Property Damage ................................. G - 1
Coverage L - Premises Liability Coverage ..................................................................... E - 1
Coverage M - Premises Medical Payments Coverage ..................................................... E - 1

Exclusions ........................................................................................................................ F - 1


**Section I - Property Protection and Section II - Liability Protection Conditions**

Assignment ....................................................................................................................... H - 1
Breach of Warranty ......................................................................................................... H - 1
Cancellation ..................................................................................................................... H - 1
    Our Right to Cancel or Refuse to Renew ............................................................. H - 1
    Return of Premium ................................................................................................. H - 1
    Your Right to Cancel .............................................................................................. H - 1
Changes ............................................................................................................................ H - 2
Concealment or Fraud ..................................................................................................... H - 2
Conformity to State Law ................................................................................................. H - 2
Continuous Renewal ....................................................................................................... H - 2
Joint Obligations ............................................................................................................. H - 2
Known Loss ...................................................................................................................... H - 2
Our Right to Recover Payment ....................................................................................... H - 2
Policy Period .................................................................................................................... H - 2

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

## AGREEMENT

In return for **your** premium payment and **your** compliance with all of the provisions of this policy, **we** agree to provide insurance subject to all the terms of this policy. The coverages provided, the limits of **our** liability and the premiums are shown on the Declarations Page of this policy.

## DEFINITIONS

The following terms appear in bold type throughout this policy and are defined as follows:

1. "**You**" and "**your**" refer to the Named Insured shown on the Declarations Page. "**You**" and "**your**" also includes the spouse of an individual Named Insured shown on the Declarations Page if that spouse is a resident of the same household as the individual Named Insured.

2. "**We**", "**us**" and "**our**" refer to Trustgard Insurance Company.

3. "**Bodily injury**" means bodily harm, sickness or disease, including required care, loss of services, and resulting death.

4. "**Business**" means any full-time or part-time trade, profession or occupation. It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

5. "**Fungi**" means:

   a. any type or form of fungus, including mold or mildew, and any mycotoxins, spores, or by-products produced or released by **fungi**.

   b. under Section II - Liability Protection, this does not include any **fungi** that are on, or are contained in, a good or product intended for consumption.

6. "**Insured**" means:

   a. the person or organization shown as the Named Insured on the Declarations Page;

   b. any person or organization while acting as real estate manager for **you**; and

   c. any additional insured shown on the Declarations Page, but only for Coverage A - Dwelling, Coverage B - Other Structures, Coverage L - Premises Liability, and Coverage M - Premises Medical Payments and only for the **insured premises**.

7. "**Insured premises**" means the premises covered by this policy at the location shown on the Declarations Page.

8. "**Motor vehicle**" means:

   a. any registered or unregistered motorized vehicle or conveyance which is designed for travel on public roads or property;

   b. any registered or unregistered motorized vehicle or conveyance designed for recreational use off public roads;

   c. any other registered or unregistered motorized vehicle or conveyance that is not described in 8. a. or 8. b. above;

   d. any hovercraft, amphibious vehicle, or aircraft;

   e. any trailer which is being carried on, towed by or hitched for towing by a vehicle described in 8. a. through 8. d. above, or a semi-trailer regardless of its use;

   f. any vehicle while being towed by or carried on a vehicle or conveyance described in 8. a. through 8. e. above;

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

g. any vehicle or conveyance described in 8. a. through 8. e. above that:

    (1) is not maintained and in good or workable condition; or

    (2) is outdated, obsolete or unusable and is stored or not being used.

h. equipment and accessories of any motorized vehicle or conveyance, trailer or semi-trailer defined in 8. a. through 8. g. above.

9. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the policy period.

10. "**Property damage**" means physical injury to or destruction of tangible property, including loss of its use.

11. "**Residence employee**" means an employee of an **insured** whose duties are in connection with the maintenance or use of the **insured premises**.

## SECTION I - PROPERTY PROTECTION

## COVERAGE A - DWELLING

A. **We** cover:

1. the dwelling, including structures attached to it, on the **insured premises** shown on the Declarations Page. The dwelling must be used principally for dwelling purposes.

2. construction materials and supplies on or adjacent to the **insured premises** for use in the construction, alteration or repair of the dwelling on the **insured premises**.

3. building equipment and outdoor equipment used to service the **insured premises** if such equipment is:

   a. owned by **you**;

   b. located at the **insured premises**; and

   c. not covered otherwise in this policy.

B. **We** do not cover land or water, no matter where located, or the replacement, rebuilding, restoration, remediation, stabilization or value of any such land or water.

## COVERAGE B - OTHER STRUCTURES

A. **We** cover:

1. other structures on the **insured premises** which are not attached to the dwelling and are permanently attached to or otherwise forming a part of the realty. Structures connected to the dwelling by only a utility line, fence or similar connection are considered to be other structures and not part of the dwelling.

2. construction materials and supplies on or adjacent to the **insured premises** for use in the construction, alteration or repair of the other structures on the **insured premises**.

B. **We** do not cover:

1. other structures on the **insured premises**, which are not attached to the dwelling and are permanently attached to or other wise forming a part of the realty, if used to any extent for **business** purposes;

2. other structures on the **insured premises**, which are not attached to the dwelling and are permanently attached to or other wise forming a part of the realty, if rented or held for rental in whole or in part to a person other than a tenant of the dwelling, unless used only for private garage purposes; or

3. land or water, no matter where located, or the replacement, rebuilding, restoration, remediation, stabilization or value of any such land or water.

## COVERAGE D - LOSS OF RENTS

A. **We** will pay for **your** loss of rent resulting from a covered loss while the rented part of the **insured premises** is uninhabitable, less charges and expenses which do not continue during that time. **We** will pay this loss of rent only for the shortest time needed to make the rented part habitable, but not to exceed 12 months.

B. If damage caused by a Peril **We** Insure Against occurs at a neighboring premises, **we** will pay reasonable loss of rent for up to 15 days should civil authorities prohibit occupancy of the **insured premises**.

The period of time allowed for this coverage will not be shortened by the expiration of this policy.

**We** will not pay for loss or expense due to the cancellation of a lease or agreement.

No deductible will apply to this coverage.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

---

## SECTION I - ADDITIONAL COVERAGES

1. **Debris Removal**

   **We** will pay reasonable expenses **you** incur to remove debris of covered property if a Peril **We** Insure Against causes the loss to that covered property.

   This expense is included in the limit of liability shown on the Declarations Page that applies to the damaged property. If the loss to that property and the cost of debris removal is more than **our** limit of liability for the property, **we** will pay up to an additional 5% of that limit for debris removal.

2. **Emergency Removal of Property**

   **We** will pay for covered property damaged in any way when being removed or while removed from a premises because of danger from a Peril **We** Insure Against. Coverage is limited to a 30-day period from date of removal. Payments will not increase the amount of insurance applying to the covered property.

3. **Fire Department Charges**

   **We** will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a Peril **We** Insure Against. **We** will not pay if the covered property is within the limits of the city, municipality, or protection district which provides the fire department response. Payments are in addition to the amount of insurance applying to the loss. No deductible applies to this coverage.

4. **Inflation Protection**

   The limits of **our** liability shown on the Declarations Page of this policy for Coverage A - Dwelling will be increased by an amount as determined by **us**. This increase will be applied at the renewal date of the policy. In no event will the limits of liability be reduced to less than those shown on the most recent Declarations Page.

5. **Loss of Rents**

   **You** may apply up to a total of 10% of the limit of liability shown on the Declarations Page for Coverage A - Dwelling, to cover Loss of Rents as described in this policy under Coverage D - Loss of Rents. Payment under this coverage reduces the limit of liability applying to Coverage A - Dwelling.

6. **Necessary Repairs After Loss**

   **We** will pay the reasonable cost of necessary repairs made solely to protect covered property from additional damage following a loss from a Peril **We** Insure Against. Payments will not increase the amount of insurance applying to the covered property.

7. **Other Structures**

   **You** may apply up to 10% of the limit of liability shown on the Declarations Page for Coverage A - Dwelling, to a loss to structures, as described in this policy under Coverage B - Other Structures, caused by a Peril **We** Insure Against. Payment under this coverage reduces the limit of liability applying to Coverage A - Dwelling.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

## SECTION I - PERILS WE INSURE AGAINST

A. **We** cover direct physical loss to property insured under Coverage A - Dwelling and Coverage B - Other Structures caused by:

1. **Fire or Lightning.** Under this peril damage to covered property caused by **fungi**, wet or dry rot, or bacteria, which results directly or indirectly from a covered fire or lightning loss, is also covered. When **fungi**, wet or dry rot, or bacteria damage results directly or indirectly from a covered fire or lightning loss, the total of all damages is subject to the Limits of Liability stated on the Declarations page for each Coverage.

2. **Windstorm or Hail**

   This does not include loss:

   a. caused directly or indirectly by frost, cold weather, ice other than hail, snow or sleet whether driven by wind or not;

   b. to the interior of a building caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters; or

   c. to the following:

      (1) radio, or television antennas or aerials including their lead-in wiring, masts or towers;
      (2) watercraft and their trailers, furnishings, equipment and motors;
      (3) lawns, trees, shrubs, or plants; or
      (4) awnings, canopies and signs.

3. **Explosion**

   This peril does not apply to loss by explosion of steam boilers, steam pipes, steam turbines or steam engines owned by or leased by **you** or operated under **your** control.

   Explosion does not mean:

   a. electric arcing;

   b. breakage of water pipes; or

   c. breakage or operation of pressure relief devices.

4. **Riot or Civil Commotion**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle. This peril does not apply to loss to fences, driveways and walks caused by vehicles owned or operated by **you** or an occupant of the **insured premises**.

7. **Smoke**, if the loss is sudden and accidental. This peril does not apply to loss caused by smoke from fireplaces or from agricultural smudging or industrial operations.

8. **Vandalism or Malicious Mischief**

   This peril does not apply to loss:

   a. by theft, burglary or larceny. This peril does apply to damage to the covered dwelling or covered other structures which is caused by burglars;

   b. at the **insured premises** if the covered dwelling has been vacant for more than 30 consecutive days immediately before the loss.  A dwelling under construction is not considered vacant; or

   c. to glass or safety glazing material which is part of the covered dwelling or covered other structures, except for glass building blocks.

THIS PAGE

INTENTIONALLY

LEFT BLANK.

## SECTION I - PROPERTY PROTECTION EXCLUSIONS

A. **We** do not cover loss resulting directly or indirectly by any of the following under any Section I - Property Protection coverages. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. **We** do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by a Peril **We** Insure Against.

2. Earthquake or other earth movement including loss caused by, contributed to or aggravated by landslide; mudflow; mine subsidence; earth sinking, rising or shifting. This also includes land shock waves or tremors before, during or after a volcanic eruption. We do cover direct loss that follows caused by fire, explosion, or breakage of glass.

3. Water damage, meaning:

   a. flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by wind;

   b. water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

   c. water or water-borne material below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway, foundation or swimming pool;

   caused by or resulting from human or animal forces or any act of nature.

   **We** do cover direct loss that follows, caused by fire or explosion.

4. Failure or interruption of power or other utility service which occurs away from the **insured premises**. **We** will pay for loss caused solely by a Peril **We** Insure Against that ensues at the **insured premises**.

5. Neglect of an **insured** to use all reasonable means to protect covered property at and after the time of loss, or when property is endangered by a Peril **We** Insure Against under Section I - Property Protection.

6. War (declared or undeclared), civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. Nuclear action, meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these. Loss caused by nuclear action is not considered loss by perils of Fire or Explosion or Smoke. Direct loss by fire resulting from nuclear action is covered.

8. Intentional acts, meaning loss resulting from an action by or at the direction of any **insured**, committed with the intent to cause a loss, or where the results of such action are reasonably foreseeable and cause a loss. Intentional acts include criminal acts. In the event of such loss, no **insured** is entitled to coverage, even an **insured** who did not commit or conspire to commit the act causing the loss.

   This exclusion will not apply to an innocent co-insured who did not cooperate in or contribute the creation of the loss if the loss arose out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss. Payment to the innocent co-insured may be limited to his or her ownership interest in the property as reduced by any payments to a mortgagor or other secured interest.

9. a. Any actual or alleged failure, malfunction or inadequacy of:

      (1) any of the following, whether belonging to any **insured** or to others;

         (a) computer hardware, including microprocessors;
         (b) computer application software;

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

    (c) computer operating systems and related software;
    (d) computer networks;
    (e) microprocessors (computer chips) not part of any computer system;
    (f) any other computerized or electronic equipment or components; or

(2) any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in 9. a. (1) (a) through 9. a. (1) (f) of this exclusion:

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

b.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by **you** or for **you** to determine, rectify or test for, any potential or actual problems described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion.

If an excluded cause of loss as described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion results in a Peril **We** Insure Against **we** will pay only for the loss or damage caused by the described peril.

**We** will not pay for repair, replacement or modification of any items, described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion, to correct any deficiencies or change any features.

10. **Fungi**, wet or dry rot, or bacteria.

11. Damage to or loss of use of property resulting from the entire process of a volcanic eruption. This includes, but is not limited to, eruption of a volcano, earth movement resulting from the eruption process, or discharge, dispersal or accumulation of lava, rock, soot, ash or any other material from a volcano.

12. An intentionally set fire if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant.

13. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material.

14. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

## SECTION I - PROPERTY PROTECTION CONDITIONS

1. **What to do in Case of Loss**

   If a covered loss occurs, the **insured** must:

   a. give **us** immediate written notice. In case of burglary, also notify the police;

   b. protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep records of the costs of repairs;

   c. make a list of all damaged or destroyed property, showing in detail, quantities, costs, actual cash value and amount of loss claimed;

   d. send to **us**, within 60 days after **we** request the above list and a proof of loss signed and sworn to by the **insured**, including:

      (1) the time and cause of loss;

      (2) the interest of the **insured** and all others in the property;

      (3) all encumbrances on the property;

      (4) other policies covering the loss;

      (5) changes in title, use, occupancy or possession of the property;  and

      (6) if required, any plans and specifications of the damaged buildings or fixtures;

   e. exhibit the damaged property to **us** or **our** representative, as often as may be reasonably required;

   f. submit to examinations under oath by any person named by **us**, and sign the transcript of the examinations;

   g. produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as **we** may reasonably require;

   h. produce receipts for any increased costs to maintain **your** standard living while **you** reside elsewhere, and records pertaining to any loss of rental income;

   i. cooperate with **us** in the investigation of a claim.

2. **How Losses Are Settled**

   Loss to covered property is settled on an actual cash value basis at time of loss, but not more than the amount required to repair or replace the damage property. Actual cash value includes deduction for depreciation. Any loss settlement does not include increased costs incurred to comply with the enforcement of any ordinance or law unless this coverage is provided by **your** policy.

   a. **We** will pay for loss to covered property minus the deductible amount shown on the Declarations Page or endorsements attached to this policy.

   b. In the event of a covered loss, **we** will pay the smallest of:

      (1) the actual cash value of the damaged property;

      (2) the cost to repair or replace the damaged property with property of like kind and quality; or

      (3) the limit of liability as shown on the Declarations Page that applies to the damaged property.

3. **Appraisal**

   If **you** and **we** fail to agree on the actual cash value or amount of loss, either party may make a written demand that the amount of the loss be set by appraisal.  Each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the written demand is received. The appraisers will select a competent and impartial umpire.  If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **insured premises** is located to select an umpire.

**Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy**

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal. Except, we will pay your appraiser's fee and the umpire's fee if the following conditons exist:

a. You demanded the appraisal, and;
b. The full amount of loss, as set by your appraiser, is agreed to by our appraiser, or by the umpire.

4. **Insurable Interest**

   **We** will not pay more than the insurable interest an **insured** has in the covered property, or more than the applicable limit of liability at the time of loss.

5. **Abandoned Property**

   **We** are not obliged to accept abandoned property.

6. **Our Payment of Loss**

   **We** will adjust any loss with **you** and pay **you** unless another payee is named in the policy or is legally entitled to be paid. **We** will pay within 30 days after **we** receive **your** proof of loss and the amount of loss is finally determined by:

   a. agreement between **you** or **us**;
   b. a court judgment; or
   c. an appraisal award.

7. **Mortgagee**

   Loss shall be payable to any mortgagee named on the Declarations Page, to the extent of their interests and in the order of precedence. Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

   a. **Our** Duties

      **We** will:

      (1) protect the mortgagee's interests in the insured building. This protection will not be invalidated by any act or neglect of any **insured**, breach of warranty, increase in hazard, change of ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
      (2) give the mortgagee 10 days notice before cancelling or non-renewing this policy.

   b. Mortgagee's Duties

      The mortgagee will:

      (1) furnish proof of loss within 60 days if the **insured** fails to do so;
      (2) pay upon demand any premium due if the **insured** fails to do so;
      (3) notify **us** of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
      (4) give **us** the right of recovery against any party liable for loss; but giving **us** this right will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim; and
      (5) after a loss, permit **us** to satisfy the mortgagee requirement and receive full transfer of the mortgage.

8. **Suit or Claims Against Us**

   **We** may not be sued unless there is full compliance with all the terms of this policy. A claim for loss resulting from the peril of windstorm or hail, must be reported to **us** or **our** agent within one year of the loss event, and any suit arising therefrom must be brought within one year after the loss or damage occurs. Any other suit or claim for loss must be brought within one year after the loss or damage occurs.

   However, this one year period is extended by the number of days between the date proof of loss is submitted and the date the claim is denied in whole or in part.

**Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy**

9. **No Benefit to Bailee**

   This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

10. **Other Sources of Recovery**

   If a loss covered by this policy is also covered by:

   a. other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss, except insurance in the name of an association or corporation or property owners.  If there is other insurance in the name of an association or corporation of property owners covering the same property covered by this policy, this insurance is excess;

   b. a service agreement, this insurance is excess over any amounts payable under any such agreement.  Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance;  or

   c. any other source of recovery not included in 10. a. or 10. b. above, this insurance is excess over any amounts payable by that source of recovery.

11. **Recovered Property**

   If **you** or **we** recover any property for which **we** have made payment under this policy, **you** or **we** will notify the other of the recovery.  At **your** option, the property will be returned to or retained by **you** or it will become **our** property.  If the recovered property is returned to or retained by **you**, the loss payment will be adjusted based on the amount **you** received for the recovered property.

12. **Loss Payable Clause**

   Loss shall be payable to any loss payee named on the Declarations Page, to the extent of their interests and in the order of precedence.

   a. **Our** Duties

   **We** will:

   (1) protect the loss payee's interests in the covered property.  This protection will not be invalidated by any act or neglect of any **insured**, breach of warranty, increase in hazard, change of ownership, or foreclosure if the loss payee has no knowledge of these conditions;  and

   (2) give the same advance notice of cancellation or non-renewal to the loss payee as **we** give to the named insured shown on the Declarations Page.

   b. Loss Payee's Duties

   The loss payee will:

   (1) furnish proof of loss within 60 days if the **insured** fails to do so;

   (2) pay upon demand any premium due if the **insured** fails to do so;

   (3) notify **us** of any change of ownership or occupancy or any increase in hazard of which the loss payee has knowledge;

   (4) give **us** the right of recovery against any party liable for loss;  but giving **us** this right will not impair the right of the loss payee to recover the full amount of the loss payee's claim.

THIS PAGE

INTENTIONALLY

LEFT BLANK.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

---

## SECTION II - LIABILITY PROTECTION

The coverages provided in this Section II - Liability Protection are optional coverages and apply only when Limits of Liability and a premium charge are shown on the Declarations Pages for Coverage L - Premises Liability and Coverage M - Premises Medical Payments.

---

## COVERAGE L - PREMISES LIABILITY COVERAGE

**We** will pay all sums, up to **our** limit of liability shown on the Declarations Page for this coverage, arising out of any one loss for which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage**, caused by an **occurrence** covered by this policy and arising out of the ownership, maintenance or use of the **insured premises**.

If a claim is made or suit is brought against the **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, **we** will defend the **insured** at **our** expense, using lawyers of **our** choice. **We** are not obligated to pay any claim or judgment or to defend after **we** have paid an amount equal to the limit of **our** liability shown on the Declarations Page for this coverage. **We** may investigate or settle any claim or suit as **we** think appropriate.

---

## COVERAGE M - PREMISES MEDICAL PAYMENTS COVERAGE

A. **We** will pay the **reasonable** expenses incurred, up to **our** limit of liability shown on the Declarations Page for this coverage, for **necessary** medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services. These expenses must be incurred within three years from the date of an accident causing **bodily injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when the **bodily injury**:

a. arises out of a condition in the **insured premises** or the adjoining ways; or

b. is caused by **your** operations incidental to the ownership, maintenance or use of the **insured premises**.

B. **We** do not cover injury to:

1. an **insured**;

2. to a tenant whose injury arises on that part of the premises which the tenant normally occupies; or

3. to a person who is hired to do work for **you** or on **your** behalf or by any tenant of **yours**. However, this coverage does apply to a **residence employee**.

C. **We** may pay the injured person or the party that renders the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured**.

D. "**Reasonable**" as used in Coverage M - Premises Medical Payments Coverage means: Expenses that are consistent with the usual charges of the majority of similar medical providers in the geographic area in which the expenses were incurred for the specific medical service.

E. "**Necessary**" as used in Coverage M - Premises Medical Payments Coverage means: Services that are rendered by the medical provider within the legally authorized scope of the provider's practice and are recognized within that practice as being appropriate treatment in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

**SECTION II - ADDITIONAL COVERAGES**

**We** will pay, in addition to **our** limit of liability:

1. **Claims Expenses**

   a. All costs **we** incur in the settlement of a claim or defense of a suit.

   b. Interest on the entire amount of damages awarded in a suit **we** defend accruing after judgment is entered and before **we** have paid, offered to pay, or deposited in court that portion of the judgment which is not more than **our** limit of liability.

   c. Premiums on bonds required in a suit **we** defend. But, **we** will not pay the premium for the portion of a bond amount that is greater than **our** limit of liability. **We** have no obligation to apply for or furnish bonds.

   d. Loss of earnings of an **insured**, up to $250 a day, but not other income, when **we** ask that **insured** to help **us** investigate or defend any claim or suit.

   e. Other reasonable expenses incurred by an **insured** at **our** request.

2. **First Aid Expenses**

   **We** will pay up to $1,000 per **occurrence** for reasonable and necessary expenses for immediate medical and surgical treatment provided to persons, other than an **insured**, at the time of the accident covered by this policy. **We** will pay only expenses which an **insured** incurs for treatment of the other person's **bodily injury**, resulting from the accident, covered by this policy. **We** will not pay for first aid to **you** or any other **insured**.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

## SECTION II - LIABILITY PROTECTION EXCLUSIONS

A.  Under Coverage L - Premises Liability Coverage and Coverage M - Premises Medical Payments Coverage, **we** do not cover:

1.  **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading or negligent entrustment of:

    a.  aircraft.  **We** do cover model airplanes not used or designed for transporting cargo or persons;

    b.  **motor vehicles**, owned or operated by or rented or loaned to an **insured**.

        This exclusion, A.1.b., does not apply to the ownership, maintenance, use, loading or unloading of:

        (1) a **motor vehicle** that is not subject to registration and:

            (a) used solely to service the **insured premises**; or
            (b) designed for assisting the handicapped.

    c.  any watercraft owned or operated by or rented or loaned to an **insured**.

2.  **Bodily injury** or **property damage** arising out of the rendering or failing to render professional services.

3.  **Bodily injury** or **property damage** arising out of **business** pursuits of an **insured**.

4.  **Bodily injury** or **property damage** caused by the willful, malicious, or intentional act of a minor for which an **insured** is statutorily liable.

5.  **Bodily injury** or **property damage** caused by the willful, malicious, or intentional act of any person, including any claims alleging negligent supervision, negligent entrustment, or negligent failure to control against any **insured** arising out of the willful, malicious, or intentional act.

6.  **Bodily injury** or **property damage** arising out of any premises owned, rented or controlled by an **insured** which is not an **insured premises**.

7.  **Bodily injury** or **property damage** expected or intended by any **insured**.  This includes **bodily injury** or **property damage**:

    a.  caused intentionally by or at the direction of an **insured**;  or
    b.  which results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

    This exclusion will not apply to an innocent co-insured who did not cooperate in or contribute the creation of the loss if the loss arose out of a pattern of criminal domestic violence and the perpetrator of the loss is criminally prosecuted for the act causing the loss. Payment to the innocent co-insured may be limited to his or her ownership interest in the property as reduced by any payments to a mortgagor or other secured interest.

8.  **Bodily injury** or **property damage** arising out of:

    a.  war (declared or undeclared), civil war, insurrection, rebellion or revolution;  or
    b.  a warlike act by a military force or military personnel.

    Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

9.  **Bodily injury** or **property damage** arising out of any nuclear reaction, radiation or radioactive contamination or any consequence of any of these.

10. **Bodily injury** or **property damage** which arises out of the transmission of a sexually transmitted disease or AIDS by an **insured**.

11. **Bodily injury** or **property damage** arising out of sexual molestation or any sexual activity, corporal punishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

12. **Bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

13. a. **Bodily injury** or **property damage** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of:

    (1) **fungi**, wet or dry rot, or bacteria;
    (2) lead or asbestos;
    (3) lead or asbestos compounds;  or
    (4) materials containing lead or asbestos.

    b. Any loss, cost or expense arising out of, resulting from or in any way related to any:

    (1) claim, suit, request, demand or order that any **insured** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of:

        (a) **fungi**, wet or dry rot, or bacteria;
        (b) lead or asbestos;
        (c) lead or asbestos compounds;  or
        (d) materials containing lead or asbestos;  or

    (2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of:

        (a) **fungi**, wet or dry rot, or bacteria;
        (b) lead or asbestos;
        (c) lead or asbestos compounds;  or
        (d) materials containing lead or asbestos.

14. a. **Bodily injury** or **property damage** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened discharge, disposal, seepage, migration, release or escape of pollutants at any time.

    b. Any loss, cost or expense arising out of, resulting from or in any way related to any:

    (1) claim, suit, request, demand or order that any **insured** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;  or

    (2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

15. **Bodily injury** or **property damage** arising out of:

    a. any actual or alleged failure, malfunction or inadequacy of:

    (1) any of the following, whether belonging to any **insured** or to others;

        (a) computer hardware, including microprocessors;
        (b) computer application software;
        (c) computer operating systems and related software;
        (d) computer networks;
        (e) microprocessors (computer chips) not part of any computer system;
        (f) any other computerized or electronic equipment or components;  or

**Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy**

    (2) any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph a. of this exclusion:

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

    b. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by an **insured** or for an **insured** to determine, rectify or test for, any potential or actual problems described in Paragraph a. of this exclusion.

16. Any loss arising from the sale or transfer, by an **insured**, of any real property when **bodily injury** or **property damage** results from, but is not limited to the following:

    a. known or unknown property or structural defects;
    b. known or hidden defects in the plumbing, heating and electrical systems;
    c. known or unknown soil conditions or drainage problems;  or
    d. concealment or misrepresentation of any known defects.

17. **Bodily injury** or **property damage** arising from a criminal act or omission which is committed by, or at the direction of an **insured**.  This exclusion applies regardless of whether the **insured** is actually charged with, or convicted of a crime.

18. **Bodily injury** or **property damage** caused by any of the following animals owned by or in the care of an **insured**:

    a. any dog that is being trained or has been trained to attack persons, property or other animals;
    b. any dog that is being trained or has been trained to guard persons, property or other animals;
    c. any dog, used in any manner, as a fighting dog or bred specifically for fighting;
    d. any dog with a prior history of causing:

      (1) **bodily injury** to a person;  or
      (2) injury to another animal;

    established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

    e. any non-domesticated animal.

B. Under Coverage L - Premises Liability Coverage, **we** do not cover:

1. Liability assumed under an oral contract or agreement by an **insured**, or under a contract or agreement in connection with any **business** of an **insured**.

2. **Property damage** to property owned by an **insured**.

3. **Property damage** to property occupied or used by an **insured** or rented to or in the care, custody or control of an **insured**.  But **we** will cover **property damage** to such property caused by fire, smoke or explosion.

4. **Bodily injury** to a person if an **insured** has or is required to have a policy providing worker's compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease benefits covering the **bodily injury**.

5. **Bodily injury** or **property damage** when an **insured person** is covered under a nuclear energy liability policy.  This exclusion applies even if the limits of liability of that policy have been exhausted.

6. **Bodily injury** to any **insured**.

C. Under Coverage M - Premises Medical Payments Coverage, **we** do not cover:

1. **Bodily injury** to a person who is entitled to benefits which are provided or required to be provided under any worker's compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease law.

2. **Bodily injury** to a **residence employee** if it occurs off the **insured premises** and does not arise out of and in the course of employment by an **insured**.

**Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy**

## SECTION II - LIABILITY PROTECTION CONDITIONS

1. **What to do in Case of Bodily Injury or Property Damage**

   In the event of **bodily injury** or **property damage**, the **insured** must:

   a. notify **us** or **our** agent as soon as possible. The notice must give:

      (1) **your** name and policy number;

      (2) the time, place and circumstances of the accident, **occurrence** or loss; and

      (3) the names and addresses of injured persons and witnesses;

   b. send **us** promptly any legal papers received relating to a claim or suit; and

   c. cooperate with **us** and assist **us** in any matter relating to a claim or suit.

   The **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur expenses, other than for Section II - Additional Coverages, First Aid Expenses, at the time of the accident.

2. **Duties of an Injured Person -- Coverage M - Premises Medical Payments Coverage**

   The injured person or someone acting on behalf of the injured person will:

   a. give **us**, as soon as possible, written proof of claim under oath if required;

   b. submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and

   c. authorize **us** to obtain medical and other records.

3. **Limits of Liability**

   Regardless of the number of **insureds**, injured persons, claims made or suits brought, **our** liability is limited as follows:

   a. as respects Coverage L - Premises Liability Coverage, the limit of liability stated on the Declarations Page is the total limit of **our** liability for all damages resulting from any one **occurrence**. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be resulting from one **occurrence.**

   b. as respects Coverage M - Premises Medical Payments Coverage, the limit of liability stated on the Declarations Page as applicable to "each person" is **our** limit of liability for all medical expenses for **bodily injury** to any one person as the result of any one accident.

   Subject to the limit for "each person", **our** limit for **bodily injury** to two or more persons in any one accident shall not exceed the limit of liability stated on the Declarations Page as applicable to "each accident".

4. **Severability of Insurance**

   This insurance applies separately to each **insured** against whom claim is made or suit is brought, subject to **our** limits of liability for each **occurrence**.

5. **Suit Against Us**

   **We** may not be sued unless there is full compliance with all the provisions and conditions of this policy.

   **We** may not be sued under the Coverage L - Premises Liability Coverage until the obligation of an **insured** to pay is finally determined either by judgment against the person after actual trial or by written agreement of the person, the claimant and **us**.

   No one shall have any right to join **us** as a party in a suit against an **insured**.

6. **Bankruptcy of an Insured Person**

   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured**.

7. **Other Insurance -- Coverage L - Premises Liability Coverage**

   This insurance is excess over any other valid and collectible insurance. However, if the other insurance is written as excess insurance over this specific policy, the limits of this policy apply first.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

## SECTION I - PROPERTY PROTECTION AND SECTION II - LIABILITY PROTECTION CONDITIONS

1. **Assignment**

   Interest in this policy may not be transferred without **our** written consent. But, if **you** die, the policy will cover:

   a. a surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the **insured premises**;

   b. the legal representative of the deceased person while acting within that capacity, but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

   c. a person having proper custody of insured property until a legal representative is appointed, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

2. **Breach of Warranty**

   **You** warrant that any statement **you** make in the application for this insurance is true. Any misstatement of fact **you** make in this application for this insurance will render this policy void from the inception date. If **we** void **your** policy, the premium **you** have paid will be refunded. The policy may not be rescinded after the policy has been in effect for one year, or one policy period, whichever is less.

3. **Cancellation**

   a. **Your** Right to Cancel

      **You** may cancel this policy by returning it to **us**, or by giving **us** advance notice of the date cancellation is to take effect. When cancelled by **you**, the minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater.

   b. **Our** Right to Cancel or Refuse to Renew

      **We** may cancel this policy as provided in this condition. The cancellation notice, together with our reason for cancellation, will be mailed to **you** at **your** last mailing address know by **us**, and **we** will obtain a certificate of mailing. A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last mailing address known by **us**.

      (1) When this policy has been in effect for less than 60 days and is not a renewal with **us**, **we** may cancel for any reason.

      (2) When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel:

         (a) For nonpayment of premium; or

         (b) If this policy was obtained by misrepresentation or fraud; or

         (c) For any act which measurably increases the risk originally accepted.

      (3) If **we** cancel for nonpayment of premium **we** will let **you** know of our action at least 30 days before cancellation takes effect. If **we** cancel for a reason other than nonpayment of premium, **we** will let **you** know of **our** intention at least 30 days before cancellation takes effect.

      (4) **Nonrenewal**

         **We** may elect not to renew this policy at its expiration date or, in the case of a policy written for an indefinite term, at its anniversary date. **We** will notify **you** of **our** intention not to renew, and of **our** reason for nonrenewal, at least 30 days before the expiration or anniversary date.

         (a) If **we** offer renewal and **you** fail to pay the renewal premium before the expiration date of this policy, this policy will terminate upon 30 days notice to **you**.

         (b) If insurance has been issued to the **insured** and has been in effect with **us** for five or more years, **we** will not exercise **our** right to nonrenew unless:

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

    i.  The policy was obtained through misrepresentation or fraud; or

    ii.  The risk originally accepted has measurably increased; or

    iii. The insured has received 60 days notice of **our** intention not to renew.

(c) We will mail the notice to you at your last mailing address known by us, and we shall obtain a certificate of mailing. A copy of the notice will also be sent to the agent or broker and the last known mortgagee or lienholder at the last known mailing address known by us.

All other provisions of this policy apply.

c.  Return of Premium

If this policy is cancelled, **you** may be entitled to a premium refund. If so, the premium paid to **us** for the period from the date of cancellation to the premium payment date will be refunded. The returned premium, if any, will be pro rata. If the returned premium is not refunded with the notice of cancellation, or when the policy is returned to **us**, **we** will refund it within a reasonable time after cancellation takes effect.

d.  Earned Premium Collection for a Cancelled Policy

If another policy issued by **us** to **you** has cancelled with earned premium due **us**, **we** will deduct that earned premium amount from any money received with this newly issued policy and apply that amount to the earned premium of the cancelled policy.

If this policy cancels for any reason, and **we** later agree to reinstate coverage, **you** must submit the amount of money required by **us** to reinstate this coverage and pay any earned premium due to **us** on any cancelled policy that is in **your** name. Any funds received with a reinstatement request for this policy will be applied to earned premium due, if any, on any cancelled policy in **your** name.

**We** reserve the right to reject any reinstatement request, and grant no coverage, if funds required by **us** are not submitted, or if the risk is no longer acceptable to **us**.

4.  **Changes**

This policy and the Declarations Page include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change. If any coverage **you** have under this policy is broadened by **us** without charge during the policy period, this policy will automatically provide the broadened coverage as of its effective date.

5.  **Concealment or Fraud**

The entire policy will be void if, whether before or after a loss, an **insured** has:

a.  intentionally concealed or misrepresented any material fact or circumstance;

b.  engaged in fraudulent conduct;  or

c.  made false statements;

in any application or form submitted to **us** for this insurance, or with regard to any other aspect of this insurance, including procurement of this policy. The policy may not be rescinded after the policy has been in effect for one year, or one policy period, whichever is less.

6.  **Conformity to State Law**

Any policy provision contrary to laws of the state in which this policy is issued is amended to conform to such laws.

7.  **Continuous Renewal**

If **we** elect to continue this insurance, **we** will renew this policy if **you** pay the required renewal premium for each successive policy period subject to **our** premiums, rules and forms then in effect.  **You** must pay **us** prior to the end of the current policy period or else this policy will expire.

*Trustgard Insurance Company -- Dwelling Fire Basic Form DF-1 Policy*

8. **Joint Obligations**

The terms of this policy impose joint obligations on the person named on the Declarations Page as the Named Insured and that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and failures to act of a person defined as **you** or **your** will be binding upon another person defined as **you** or **your**.

The terms of this policy impose joint obligations on any person defined as an **insured**. This means that the responsibilities, acts and failures to acts and failures to act of a person defined as an **insured** will be binding upon another person defined as an **insured**.

9. **Known Loss**

**We** do not provide coverage for any loss or **occurrence** which was known to any **insured** and occurred prior to the time **you** signed the application for coverage, or asked **us** or **our** agent to provide coverage, even if the loss or **occurrence** falls within the period covered by the policy.

10. **Our Right to Recover Payment**

After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under Section I - Property Protection if **you** have waived it in writing prior to loss.

The **insured person** will do whatever is required to transfer this right to **us**.

11. **Policy Period**

This policy applies only to loss under Section I - Property Protection, or **bodily injury** or **property damage** under Section II - Liability Protection, which occurs during the policy period.

**IN WITNESS WHEREOF, we** have caused this policy to be signed by **our** President and attested by **our** Secretary, and, if required by state law, this policy shall not be binding upon **us** unless countersigned by **our** authorized representative.

LaVawn D. Coleman
**Secretary**

Thomas H. Welch
**President**

THIS PAGE

INTENTIONALLY

LEFT BLANK.

# Exhibit C

To Complaint for Declaratory Judgment
Trustgard Insurance Company v. Lynn M. Fagan, et al.



671 South High Street
P.O. Box 1218
Columbus, Ohio 43216-1218
614.445.2900 or 1.800.422.0550
grangeinsurance.com

October 3, 2017

**VIA CERTIFIED AND REGULAR U.S. MAIL**

Ms. Lynn Fagan
█████████████████

AND

█████████████████

RE:    Named Insured:      Lynn Fagan
       Claim Number:       FP0002180821
       Policy Number:      DF 1481191 01 04
       Date of Loss:       09/04/2015
       Court:              Court of Common Pleas, Lackawanna County, Pennsylvania
       Case Number:        17CV4C98
       Case Name:          *Cheryl Loconte, as the Administratrix of the Estate of Amanda M.*
                           *Loconte v. New View Homes, Inc., et al.*

### RESERVATION OF RIGHTS

Dear Ms. Fagan:

#### Introduction

This will acknowledge receipt of a lawsuit filed against you individually and doing business as Bright Futures Sober Living Homes. We understand that you are seeking coverage under the Trustgard Insurance Company (hereinafter Trustgard) policy issued to Lynn Fagan with an effective date of April 22, 2014. In accordance with the policy terms, I have referred your defense to Attorney Richard E. Santee of Bethlehem, Pennsylvania, telephone number (610) 691-7000. Please extend your full cooperation to Attorney Santee and his associates throughout this litigation. Trustgard will be providing you with a defense under a **Reservation of Rights**. Any investigation, defense, or settlement negotiations conducted during this lawsuit does not waive or estop Trustgard from subsequently denying the duty to defend or indemnify.

#### Complaint/Allegations

Although we do not accept the plaintiff's version of facts of this case as true, they will be used for discussion purposes during this letter. The Complaint alleges that on or about July 2015, Amanda LoConte contacted you individually and Bright Futures regarding sober living residences. Allegedly, you made representations to her regarding the environment at Bright Futures and provided "house rules" as she had a history of drug addiction. On July 22, 2015, Ms. Loconte moved into the sober living facility. Allegedly, after she moved to the facility, she was only drug tested one time, no house meetings were conducted as represented, and Defendants failed to address concerns she had with the facility. On September 4, 2015, Ms. Loconte passed away due to the pharmacologic effects of morphine and alcohol. The Complaint alleges that Defendants failed to exercise reasonable care and were negligent, careless, and reckless which increased the risk of harm ultimately suffered by Ms. Loconte.

Grange Mutual Casualty Co.    Grange Life Insurance Co.    Grange Indemnity Insurance Co.    Grange Property & Casualty Insurance Co.
Grange Insurance Co. of Michigan    Trustgard Insurance Co.    Integrity Mutual Insurance Co.    Integrity Property & Casualty Insurance Co.

Count I of the Complaint alleges survival action. Count II of the Complaint alleges a wrongful death action. Count III alleges violation of the Unfair Trade Practices and Consumer Protection Law. Count IV alleges negligence per se.

### The Trustgard Insurance Company Policy

The Trustgard Insurance Company policy issued to you provides the following relevant provisions. Please read the complete policy for its entire terms and conditions.

**Dwelling Fire Policy DF-1 Basic Form (IHH203JI (10/07))**

**AGREEMENT**

In return for your premium payment and your compliance with all of the provisions of this policy, we agree to provide insurance subject to all the terms of this policy. The coverages provided, the limits of our liability and the premiums are shown on the Declarations Page of this policy.

**DEFINITIONS**

The following terms appear in bold type throughout this policy and are defined as follows:

1. **"You"** and **"your"** refer to the Named Insured shown on the Declarations Page. "You" and "your" also includes the spouse of an individual Names Insured shown on the Declarations Page if that spouse is a resident of the same household as the individual Names Insured.

2. **"We"**, **"us"** and **"our"** refer to Trustgard Insurance Company.

3. **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services, and resulting death.

4. **"Business"** means any full-time or part-time trade, profession or occupation. It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

6. **"Insured"** means:

   a. the person or organization shown as the Named Insured on the Declarations Page;
   b. any person or organization while acting as real estate manager for **you**; and
   c. any additional insured shown on the Declarations Page, but only for Coverage A – Dwelling, Coverage B – Other Structures, Coverage L – Premises Liability, and Coverage M – Premises Medical Payments and only for the **insured premises**.

7. **"Insured premises"** means the premises covered by this policy at the location shown on the Declarations Page.

9. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the policy period.

**SECTION II – LIABILITY PROTECTION**

The coverages provided in this Section II – Liability Protection are optional coverages and apply only when Limits of Liability and a premium charge are shown on the Declarations Pages for Coverage L – Premises Liability and Coverage M – Premises Medical Payments.

## COVERAGE L – PREMISES LIABILITY COVERAGE

We will pay all sums, up to our limit of liability shown on the Declarations Page for this coverage, arising out of any one loss for which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage**, caused by an **occurrence** covered by this policy and arising out of the ownership, maintenance or use of the **insured premises**.

If a claim is made or suit is brought against the **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, **we** will defend the **insured** at **our** expense, using lawyers of **our** choice. **We** are not obligated to pay any claim or judgment or to defend after **we** have paid an amount equal to the limit of **our** liability shown on the Declarations Page for this coverage. **We** may investigate or settle any claim or suit as **we** think appropriate.

## COVERAGE M – PREMISES MEDICAL PAYMENTS COVERAGE

A.   **We** will pay the **reasonable** expenses incurred, up to **our** limit of liability shown on the Declarations Page for this coverage, for **necessary** medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services. These expenses must be incurred within three years from the date of an accident causing **bodily injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when the **bodily injury**:

a. arises out of a condition in the **insured premises** or the adjoining ways; or

b. is caused by **your** operations incidental to the ownership, maintenance or use of the **insured premises**.

B.   **We** do not cover injury to:

2. to a tenant whose injury arises on that part of the premises which the tenant normally occupies; or

## SECTION II – LIABILITY PROTECTION EXLCLUSIONS

A.   Under Coverage L – Premises Liability Coverage and Coverage M – Premises Medical Payments Coverage, **we** do not cover:

2. **Bodily injury** or **property damage** arising out of the rendering or failing to render professional services.

3. **Bodily injury** or **property damage** arising out of **business pursuits** of an **insured**.

12. **Bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion

does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

B.    Under Coverage L – Premises Liability Coverage, we do not cover:

    1. Liability assumed under an oral contract or agreement by an insured, or under a contract or agreement in connection with any business of an insured.

## SECTION II – LIABILITY PROTECTION CONDITIONS

**3.    Limits of Liability**

Regardless of the number of insureds, injured persons, claims made or suits brought, our liability is limited as follows:

a.  as respects Coverage L – Premises Liability Coverage, the limit of liability stated on the Declarations Page is the total limit of our liability for all damages resulting from any one occurrence. All bodily injury and property damage resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be resulting from one occurrence.

b.  as respects Coverage M – Premises Medical Payments Coverage, the limit of liability stated on the Declarations Page as applicable to "each person" is our limit of liability for all medical expenses for bodily injury to any one person as the result of any one accident.

Subject to the limit for "each person", our limit for bodily injury to two or more persons in any one accident shall not exceed the limit of liability stated on the Declarations Page as applicable to "each accident".

### Trustgard Insurance Company's Position

Trustgard Company issued a Dwelling Fire Policy – IHH203JI (10-2007) to Lynn Fagan with an effective date from April 22, 2015 to April 22, 2016. The allegations in the Complaint may not constitute covered losses under your Dwelling Fire policy. Specifically, the complaint names New View Homes LLC as a defendant. New View Homes LLC is not an "insured" under this policy. Also, the complaint alleges that you failed to provide professional services associated with operating a sober living house, including failing to provide drug testing, failing to provide house meetings, failing to provide recovery services, failing to provide properly trained staff, and failing to respond to concerns of tenants/customers. Your policy excludes losses arising out of rendering or failing to render professional services or arising out of any business operated by you. Services of providing drug testing, recovery services, house meetings, properly trained staff, etc. go beyond the business of being a landlord. Further, the loss arises out of the use of illegal drugs resulting in the death of Amanda Loconte. The policy excludes losses for "bodily injury" or "property damage" arising out of the use of illegal drugs. Based upon our review of the Complaint and the applicable policy language, it is the position of Trustgard Insurance Company that coverage may not exist under your homeowners policy for any of the Plaintiff's allegations.

Based on these allegations, it is questionable whether there is coverage for some of the allegations of the Complaint under the policy.

In bringing the following matters to your attention, we do not mean to imply that any of the allegations in Plaintiff's Complaint are true, nor do we wish for this letter to be construed as diminishing Trustgard's strong and common interest with you in the successful defense of this lawsuit. We simply must advise you at this time of potential insurance coverage limitations.

## Conclusion

I trust that this letter has adequately explained Trustgard's position to you. Trustgard expressly reserves all rights to assert any other defense or policy defense, which may become apparent in the future. Nothing contained herein is intended, nor should it be construed as, a waiver of any of the policy terms or conditions. If you are aware of information that should cause us to reconsider our position with respect to your claim, please provide this information, in writing, to my office immediately.

Additional facts, circumstances and policy language not mentioned in this letter may apply to this claim and may provide additional reasons for denial of coverage. Nothing stated in or implied by this letter, nor any action taken, declined, or deferred in this matter by Trustgard and/or any of its agents and/or representatives has been intended, and should not be construed, as a waiver of any rights, claims or defenses under the policy or to which it is otherwise entitled. Instead, Trustgard reserves, without qualification or limitation, all rights, claims or defenses available to it under the policy and otherwise allowed by law. Trustgard specifically reserves its right to decline coverage for any other reason, which may come to the company's attention in the future.

Trustgard also reserves the right to recoup from you any defense costs or fees paid, if any, subject to this reservation of rights, on the basis that no duty to defend exists or has existed with regard to the tendered suit.

Both you and Trustgard may, subject to the applicable statute of limitations and/or the policy's suit limitation clause, have the right to file a declaratory judgment action requesting a court of competent jurisdiction to declare the rights and obligations of the parties under the Trustgard policy.

Please feel free to call me with any questions at the number listed below.

Sincerely,

*Rebecca Roman /sd*

Rebecca Roman, CPCU, SCLA, AIC, CLCS

Senior Litigation Specialist
Grange Insurance
Phone: 800-8442-1123 x 7328
Fax: 866-256-9205
Email: Legal@grangeinsurance.com

cc:     A 2 Z Insurance Agency, LLC
        Richard E. Santee, Esq.

# Exhibit D

To Complaint for Declaratory Judgment
Trustgard Insurance Company v. Lynn M. Fagan, et al.

# BENNETT, BRICKLIN & SALTZBURG LLC

ATTORNEYS AT LAW
1601 MARKET STREET | 16TH FLOOR
PHILADELPHIA, PA 19103-2326
PHONE: (215) 561-4300 | FAX: (215) 561-6661

DIRECT DIAL: (215) 665-3328
EMAIL: cummins@bbs-law.com

WWW.BBS-LAW.COM

Februray 12, 2018

**VIA REGULAR AND CERTIFIED MAIL**

New View Homes, Inc.
c/o Ms. Lynn Fagan
█████████████████

RE:   <u>LoConte v. New View Homes, Inc., et al.</u>
Insurance Coverage Denial
Claim No: FP00002180821
Our File No. 9615-113634

**INSURANCE COVERAGE DENIAL/RESERVATION OF RIGHTS**

Dear Ms. Fagan:

This law firm has been retained to represent the interests of Trustgard Insurance Company.  You had previously notified Trustgard of the above-referenced lawsuit filed against New View Homes, Inc., by the Estate of Amanda M. Loconte in the Court of Common Pleas of Lackawanna County, Pennsylvania (Docket No. 17-CV-4698) ("Loconte Lawsuit").  You sought coverage for New View under the Trustgard Insurance Company policy (No. DF 1481191; Period 4/22/15 to 4/22/16) issued to the named insured, Lynn Fagan, insuring the premises located at 533 Birch Street, Scranton, PA 18508 ("Policy").  By way of letter dated October 3, 2017, Trustgard denied coverage to New View Homes on the basis that it was not an insured on the Trustgard policy.

Upon further consideration, Trustgard has determined that New View Homes qualifies as an insured on the Trustgard policy.  For this reason, Trustgard has decided to assume the defense of New View Homes.  Trustgard has referred New View's defense to attorney Richard E. Santee of Bethlehem, Pennsylvania, who is also currently defending you and Bright Futures against the Loconte Lawsuit.

**BENNETT, BRICKLIN & SALTZBURG LLC**
ATTORNEYS AT LAW

Februray 12, 2018
Page 2

While Trustard has agreed to assume New View's defense for the time being, it has also determined that there is no coverage under the Policy for the claims alleged against New View in the Loconte Lawsuit; therefore, Trustgard Insurance Company is denying coverage to New View for the Loconte Lawsuit. The basis for Trustgard's position is outlined below.

It is Trustgard Insurance Company's intention to file a declaratory judgment lawsuit against New View seeking a declaration from the court that Trustgard Insurance Company does not have a duty to defend or indemnify New View against the claims alleged in the Loconte Lawsuit. Until the court makes a determination in this regard, Trustgard will continue to pay for New View's defense against the Loconte Lawsuit, and Richard E. Santee will continue to defend New View. If the court determines that there is no coverage for the Loconte Lawsuit, Trustgard will instruct Mr. Santee to withdraw from New View's defense.

## Basis for Denial

The Loconte Lawsuit seeks to recover for the death of Amanda M. Loconte at the insured premises, 533 Birch Street, Scranton, Pennsylvania, on September 4, 2015, following her overdose on alcohol and morphine. The complaint alleges that you, both individually and doing business as Bright Futures Sober Living Homes, "owned and operated multiple sober living residences in Scranton," including the residence located at 533 Birch Street, Scranton, PA. In particular, the complaint alleges that "New View Homes was engaged in the management and operation of the sober living residences operated by … [you] and Bright Futures," and that you "represented [your]self to be the house manager for … Bright Futures."

The complaint alleges that in July 2015, Amanda Loconte, who had a history of addiction to "heroin, morphine, and … alcohol" contacted you about residing at Bright Futures. In response to the inquiry, you are alleged to have told Amanda Loconte that you would "provide[] a cost effective, safe, and structured environment for people in recovery," which included "frequent and random drug testing" to "maintain a sober environment within the residences," and that you required participation in scheduled meetings held at the residences. You allegedly told Amana Loconte that "the purpose of the sober living residences [were] for security and predictability of the residents and others in recovery," and you are alleged to have supplied Amanda Loconte with "House Rules" to which all residents had to adhere.

The Loconte lawsuit alleges that Amanda Loconte moved into the Birch Street property on July 22, 2015. The complaint alleges that you and the other defendants failed to provide the sober living services allegedly promised to Amanda Loconte. The complaint alleges that, due your alleged failure to provide these services, "[o]n September 4, 2015, Amanda M. LoConte passed away due to the combined pharmacological effects of morphine and alcohol."

The Trustgard Policy contains a Controlled Substances exclusion. The exclusion states that the insurance does not apply to:

> **Bodily injury** … arising out the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to legitimate use of prescription drugs by a person following the orders of a licensed physician.

Policy at F-2 ¶ (A)(12).  Depending upon its dosage in a compound, Morphine is either a Schedule II or III "controlled substance" under the Federal Food and Drug Law.  28 U.S.C.A. § 802.  It is also a narcotic drug.  Heroin is a Schedule I controlled substance[1].

Since the Loconte Lawsuit seeks to recover for bodily injury to Amanda Loconte arising out of her use of a controlled substance, the allegations of the Loconte complaint fall entirely within the scope of the Controlled Substances exclusion.  Consequently, Trustgard has no duty to defend or indemnify New View against the Loconte Lawsuit.  Trustgard is denying coverage to New View for this reason.

In addition, the Trustgard Policy contains a Business Pursuits exclusion.  The exclusion states that the insurance does not apply to "**bodily injury** … arising out of **business** pursuits of an **insured**."  Policy at F-1 ¶ (A)(3).  The Policy further states:

> "**Business**" means any full-time or part-time trade, profession or occupation.  It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

Policy at Definitions-1.  The provision of sober living services as alleged in the complaint goes beyond the rental or holding for rent of the insured premises as a dwelling.  Consequently, the provision of a sober living services constitutes a business pursuit.

Since the Loconte lawsuit seeks to recover for bodily injury to Amanda Loconte arising out of New View's business pursuits in providing sober living services, the allegations of the Loconte Lawsuit fall entirely within the scope of the Business Pursuits exclusion.  Consequently, Trustgard has no duty to defend or indemnify New View against the Loconte Lawsuit.  Trustgard is denying coverage to New View for this additional reason.

## <u>Conclusion</u>

Since Trustgard has determined that New View qualifies as insured on the insurance policy, it is assuming New View's defense for the time being, subject to this reservation of rights.  By reason

---

1 While the complaint alleges that Ms. Loconte consumed morphine, news reports indicate that Ms. Loconte actually consumed heroin, which is closely related to morphine.

**BENNETT, BRICKLIN & SALTZBURG LLC**
ATTORNEYS AT LAW

Februray 12, 2018
Page 4

of the operation of the Controlled Substances and Business Pursuits exclusions, however, Trustgard Insurance Company is ultimately denying coverage to New View for the claims alleged in the Loconte Lawsuit.

It is the intention of Trustgard Insurance Company to file a declaratory judgment action against New View seeking a declaration from the court that Trustgard Insurance Company does not have a duty to defend or indemnify New View against the Loconte Lawsuit. Until the court makes a determination in this regard, Trustgard Insurance Company will continue to pay for New View's defense costs in the Loconte Lawsuit. If you are aware of any information that should cause Trustgard to reconsider its position with respect to your claim, please provide this information, in writing, to my office immediately.

Trustgard Insurance Company expressly reserves all rights to assert any other defense or policy provision, which may become apparent in the future, including, but not limited to, those provisions set out in the October 3, 2017 reservation of rights letter sent to you. That letter is attached for your review, and incorporated here by reference. Nothing contained herein is intended, nor should it be construed as, a waiver of any of the policy terms and conditions.

Additional facts, circumstances and policy language not mentioned in this letter may apply to this claim and may provide additional reasons for denial of coverage. Any action taken, declined, or deferred in this matter by Trustgard Insurance Company, its agents, or representatives has not been intended, nor should it be construed as, a waiver of any rights, claims or defenses under the policy or to which it is otherwise entitled. Instead, Trustgard Insurance Company reserves, without qualification or limitation, all rights, claims or defenses available to it under the policy and otherwise allowed by law. Trustgard Insurance Company specifically reserves its rights to decline coverage for any other reason that may come to the company's attention in the future.

Very truly yours,

Nicholas A. Cummins

NAC
Enclosure
cc:     Richard E. Santee, Esq.
        A 2 Z Insurance Agency, LLC

# Exhibit E

To Complaint for Declaratory Judgment
Trustgard Insurance Company v. Lynn M. Fagan, et al.

# BENNETT, BRICKLIN & SALTZBURG LLC

ATTORNEYS AT LAW
1601 MARKET STREET | 16TH FLOOR
PHILADELPHIA, PA  19103-2326
PHONE: (215) 561-4300 | FAX: (215) 561-6661

DIRECT DIAL: (215) 665-3328

WWW.BBS-LAW.COM
EMAIL: cummins@bbs-law.com

Febrruay 12, 2018

## VIA REGULAR AND CERTIFIED MAIL

Ms. Lynn Fagan
Individually and
d/b/a Bright Futures Sober Living Homes

███████████████████████████

RE:  <u>LoConte v. New View Homes, Inc., et al.</u>
Insurance Coverage Denial
Claim No: FP00002180821
Our File No. 9615-113634

## INSURANCE COVERAGE DENIAL

Dear Ms. Fagan:

This law firm has been retained to represent the interests of Trustgard Insurance Company.  You had previously notified Trustgard of the above-referenced lawsuit filed against you, both individually and trading as Bright Futures Sober Living Homes, by the Estate of Amanda M. Loconte in the Court of Common Pleas of Lackawanna County, Pennsylvania (Docket No. 17-CV-4698) ("Loconte Lawsuit").  You sought coverage under the Trustgard Insurance Company policy (No. DF 1481191; Period 4/22/15 to 4/22/16) issued to the named insured, Lynn Fagan, insuring the premises located at 533 Birch Street, Scranton, PA 18508 ("Policy").  In accordance with the terms of the Policy, Trustgard referred your defense to Richard E. Santee.  However, Trustgard also notified you, by way of a letter dated October 3, 2017, that it would be providing you with this defense under a Reservation of Rights, thereby reserving its right to deny coverage to you and Bright Futures for defense and indemnification against the Loconte Lawsuit, should it become clear that there was no coverage under the policy.

**BENNETT, BRICKLIN & SALTZBURG LLC**
ATTORNEYS AT LAW

Februray 12, 2018
Page 2


After further investigation, Trustgard has determined that there is no coverage under the Policy for the claims alleged against you and Bright Futures in the Loconte Lawsuit; therefore, Trustgard Insurance Company is denying coverage to you and Bright Futures Sober Living Homes for the Loconte Lawsuit. The basis for Trustgard's position is outlined below.

It is Trustgard Insurance Company's intention to file a declaratory judgment lawsuit against you seeking a declaration from the court that Trustgard Insurance Company does not have a duty to defend or indemnify you against the claims alleged in the Loconte Lawsuit. Until the court makes a determination in this regard, Trustgard will continue to pay for your defense against the Loconte Lawsuit, and Richard E. Santee will continue to defend you. If the court determines that there is no coverage for the Loconte Lawsuit, Trustgard will instruct Mr. Santee to withdraw from your defense.

## Basis for Denial

The Loconte Lawsuit seeks to recover for the death of Amanda M. Loconte at the insured premises, 533 Birch Street, Scranton, Pennsylvania, on September 4, 2015, following her overdose on alcohol and morphine. The complaint alleges that you, both individually and doing business as Bright Futures Sober Living Homes, "owned and operated multiple sober living residences in Scranton," including the residence located at 533 Birch Street, Scranton, PA. In particular, the complaint alleges that "New View Homes was engaged in the management and operation of the sober living residences operated by … [you] and Bright Futures," and that you "represented [your]self to be the house manager for … Bright Futures."

The complaint alleges that in July 2015, Amanda Loconte, who had a history of addiction to "heroin, morphine, and … alcohol" contacted you about residing at Bright Futures. In response to the inquiry, you are alleged to have told Amanda Loconte that you would "provide[] a cost effective, safe, and structured environment for people in recovery," which included "frequent and random drug testing" to "maintain a sober environment within the residences," and that you required participation in scheduled meetings held at the residences. You allegedly told Amana Loconte that "the purpose of the sober living residences [were] for security and predictability of the residents and others in recovery," and you are alleged to have supplied Amanda Loconte with "House Rules" to which all residents had to adhere.

The Loconte lawsuit alleges that Amanda Loconte moved into the Birch Street property on July 22, 2015. The complaint alleges that you and the other defendants failed to provide the sober living services allegedly promised to Amanda Loconte. The complaint alleges that, due your alleged failure to provide these services, "[o]n September 4, 2015, Amanda M. LoConte passed away due to the combined pharmacological effects of morphine and alcohol."

**BENNETT, BRICKLIN & SALTZBURG LLC**
ATTORNEYS AT LAW

Februray 12, 2018
Page 3

The Trustgard Policy contains a Controlled Substances exclusion.  The exclusion states that the insurance does not apply to:

> **Bodily injury** … arising out the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to legitimate use of prescription drugs by a person following the orders of a licensed physician.

Policy at F-2 ¶ (A)(12).  Depending upon its dosage in a compound, Morphine is either a Schedule II or III "controlled substance" under the Federal Food and Drug Law.  28 U.S.C.A. § 802.  It is also a narcotic drug.  Heroin is a Schedule I controlled substance[1].

Since the Loconte Lawsuit seeks to recover for bodily injury to Amanda Loconte arising out of her use of a controlled substance, the allegations of the Loconte complaint fall entirely within the scope of the Controlled Substances exclusion.  Consequently, Trustgard has no duty to defend or indemnify you or Bright Futures Sober Living Homes against the Loconte Lawsuit.  Trustgard is denying coverage to you for this reason.

In addition, the Trustgard Policy contains a Business Pursuits exclusion.  The exclusion states that the insurance does not apply to "**bodily injury** … arising out of **business** pursuits of an **insured**."  Policy at F-1 ¶ (A)(3).  The Policy further states:

> "**Business**" means any full-time or part-time trade, profession or occupation.  It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

Policy at Definitions-1.  The provision of sober living services as alleged in the complaint goes beyond the rental or holding for rent of the insured premises as a dwelling.  Consequently, the provision of a sober living services constitutes a business pursuit.

Since the Loconte lawsuit seeks to recover for bodily injury to Amanda Loconte arising out of your business pursuits in providing sober living services, the allegations of the Loconte Lawsuit fall entirely within the scope of the Business Pursuits exclusion.  Consequently, Trustgard has no duty to defend or indemnify you or Bright Futures Sober Living Homes against the Loconte Lawsuit.  Trustgard is denying coverage to you for this additional reason.

---

1 While the complaint alleges that Ms. Loconte consumed morphine, news reports indicate that Ms. Loconte actually consumed heroin, which is closely related to morphine.

**BENNETT, BRICKLIN & SALTZBURG LLC**
ATTORNEYS AT LAW

Februray 12, 2018
Page 4

## <u>Conclusion</u>

By reason of the operation of the Controlled Substances and Business Pursuits exclusions, Trustgard Insurance Company is denying coverage to you, both individually and doing business as Bright Futures Sober Living Homes, for the claims alleged in the Loconte Lawsuit.

It is the intention of Trustgard Insurance Company to file a declaratory judgment action against you seeking a declaration from the court that Trustgard Insurance Company does not have a duty to defend or indemnify you, individually or doing business as Bright Futures Sober Living Homes, against the Loconte Lawsuit.  Until the court makes a determination in this regard, Trustgard Insurance Company will continue to pay for your defense costs in the Loconte Lawsuit.  If you are aware of any information that should cause Trustgard to reconsider its position with respect to your claim, please provide this information, in writing, to my office immediately.

Trustgard Insurance Company expressly reserves all rights to assert any other defense or policy provision, which may become apparent in the future, including, but not limited to, those provisions set out in the October 3, 2017 reservation of rights letter sent to you.  That letter is re-enclosed for your review, and incorporated here by reference.  Nothing contained herein is intended, nor should it be construed as, a waiver of any of the policy terms and conditions.

Additional facts, circumstances and policy language not mentioned in this letter may apply to this claim and may provide additional reasons for denial of coverage.  Any action taken, declined, or deferred in this matter by Trustgard Insurance Company, its agents, or representatives has not been intended, nor should it be construed as, a waiver of any rights, claims or defenses under the policy or to which it is otherwise entitled.  Instead, Trustgard Insurance Company reserves, without qualification or limitation, all rights, claims or defenses available to it under the policy and otherwise allowed by law.  Trustgard Insurance Company specifically reserves its rights to decline coverage for any other reason that may come to the company's attention in the future.

Very truly yours,

Nicholas A. Cummins

NAC
Enclosure
cc:    Richard E. Santee, Esq.
       A 2 Z Insurance Agency LLC